# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3085

_____

Susan J. Thorn,

    Plaintiff - Appellant,

v.

Amalgamated Transit Union;
Amalgamated Transit Union,
Local 1005,

    Defendants - Appellees.

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: March 14, 2002

Filed: September 30, 2002

_____

Before LOKEN and JOHN R. GIBSON, Circuit Judges, and GOLDBERG, Judge
of the United States Court of International Trade.[*]

_____

LOKEN, Circuit Judge.

Susan Thorn, a Twin Cities bus driver and member of the Amalgamated Transit
Union (ATU) and its Local 1005 (collectively, "the Unions"), brought this suit
against her employer and the Unions asserting claims for sexual harassment and

_____

[*]The HONORABLE RICHARD W. GOLDBERG, sitting by designation.

reprisal discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2(c), -3(a), and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363.03, subds. 1 & 7. The case was removed to federal court, and the district court[1] denied Thorn's motion to remand. After she settled with her employer, the court dismissed Thorn's sexual harassment claims against the Unions because she alleged only "passive acquiescence" in the alleged sexual harassment. The court later granted summary judgment dismissing her reprisal claims. Thorn appeals all three rulings. We affirm.

## I. Background.

In June of 1999, Thorn complained to a Local 1005 steward that she was a victim of on-going and unwelcome sexual advances, requests for sexual favors, and communications of a sexual nature by male co-workers and supervisors at her work site, a Metro Transit garage in Brooklyn Center, Minnesota. Thorn accused a number of Local 1005 members of the alleged sexual harassment. A few days later, Thorn's accusations were brought to the attention of the employer's Office of Diversity and Equal Opportunity (ODEO), which began an official investigation. Thorn did not file or attempt to file a grievance request with Local 1005.

At two union meetings on June 22, Local 1005 President Robert Rossman announced that the employer had commenced a "witch hunt," similar to a 1995 ODEO investigation that resulted in the disciplining of many Local 1005 members. Thorn attended the second union meeting. She alleges that Rossman told union members "not to answer any of [ODEO's] questions even with their Union representative present." Rossman claims he merely urged members to "bring your union representative [to any ODEO interview], don't say much and basically don't sign anything because they'll change it on you." After the meeting, Thorn wrote

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

-2-

ATU's President, James La Sala, objecting to Rossman's depiction of the investigation and his instructions to Local 1005 members. ATU inquired into Rossman's actions and then advised Thorn that ATU and Local 1005 were "committed to a workplace free from harassment or discrimination of any form," and that Rossman's comments were merely an attempt to establish an appropriate role for Local 1005 in the ensuing investigation.

At the end of June, the employer transferred Thorn to another garage at her request. She alleges she encountered hostility from male co-workers who were members of Local 1005 at the new work site. After the ODEO investigation, the employer disciplined several union members Thorn had accused of sexual harassment for inappropriate behavior. They filed grievances, and Local 1005 pursued the grievances on their behalf. Though the findings of inappropriate behavior were ultimately upheld at the second stage of the grievance process or after arbitration, the initial discipline imposed on many grievants was found to be too severe. Some of the grievance decisions also questioned Thorn's credibility.

In October 1999, Thorn's attorney wrote La Sala accusing the Unions of sexual harassment and reprisal discrimination for failing to take appropriate action to end the discrimination by union members, and, citing Rossman's statements at the June 22 meetings, for urging obstruction of the ODEO investigation. In addition to demanding a substantial monetary settlement and threatening litigation, counsel wrote:

> Ms. Susan Thorn has retained me to represent her regarding her union membership with [ATU]. . . . This letter is intended to provide you with an account of some of the facts giving rise to Ms. Thorn's claims of sexual harassment, reprisal discrimination and aiding and abetting discrimination against ATU and her Union. . . . I ask that you nor anyone else from ATU or her local Union discuss this matter with Ms.

Thorn at this time. I will need to be present for any communication you have with Ms. Thorn regarding this matter.

La Sala forwarded the letter to Rossman, who sought advice from Local 1005's counsel, Gregg Corwin. Rossman then issued a memorandum to Local 1005's executive board instructing that, "if Susan Thorn contacts an executive board member for any reason, tell her our legal counsel advised you that you cannot talk to her. Have her attorney call Gregg Corwin." Thereafter, Thorn on two occasions sought assistance from her union representative in resolving unrelated disputes with her employer over issues covered by the collective bargaining agreement. However, he declined to talk to her, citing Rossman's instruction that all communication must go through counsel.

## II. The Reprisal Discrimination Claims.

In reviewing the district court's grant of summary judgment dismissing Thorn's reprisal discrimination claims under Title VII and the MHRA, we apply the familiar McDonnell Douglas three-part burden shifting analysis. See Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713-14 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983). Absent direct evidence of discrimination, we ask first whether plaintiff presented a prima facie case of reprisal discrimination, next whether defendant rebutted the resulting presumption of discrimination by advancing a legitimate reason for its challenged behavior, and finally whether plaintiff refuted defendant's legitimate reason with sufficient evidence of pretext.

Relying on cases involving alleged employer reprisal, such as Kiel v. Select Artificials, Inc., 169 F.3d 1131 (8th Cir.), cert. denied, 528 U.S. 818 (1999), the district court dismissed Thorn's reprisal claims because there is no evidence the Unions subjected Thorn to adverse *employment* action, and therefore she failed to

present a prima facie case of reprisal discrimination by the Unions. Thorn argues that adverse employment action is too narrow a focus when the reprisal defendant is not the plaintiff's employer.

The applicable statutory language supports this contention. Title VII provides that it is unlawful "for a labor organization to discriminate against any member" because she engaged in protected activity. 42 U.S.C. § 2000e-3(a). The MHRA prohibition is even more broadly written, defining unlawful reprisal to include "any form of intimidation, retaliation, or harassment." Minn. Stat. § 363.03, subd. 7. In Martin v. Local 1513, IAM, 859 F.2d 581, 585 (8th Cir. 1988), we held that, to establish a prima facie case of reprisal discrimination, plaintiff must prove that she engaged in protected activity and that the union "took adverse action against [her]" that was causally linked to the protected activity. That is the proper test.[2] Therefore, to survive summary judgment on this ground, Thorn need only show that the Unions took some meaningful adverse action against her as a union member.

Thorn's reprisal claims are premised on two events. First, Thorn argues that Rossman's comments at the June 22 Union meetings constituted intimidation and harassment in reprisal for her sexual harassment complaints against Local 1005 members. Though Rossman's comments may not have been tactful given Thorn's presence, we conclude they fell short of actionable harassment or intimidation. Title VII is not "a general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Therefore, in employer retaliation cases, "ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action." Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8th Cir. 2002). These principles apply with at least equal force to the rough

---

[2]Similarly, Frazier v. Fairhaven School Committee, 276 F.3d 52, 67 (1st Cir. 2002), and Murray v. New York University College of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995), adopted a modified prima facie case requirement for reprisal claims against educational defendants not acting as employers.

and tumble of union meetings, where members gather voluntarily to discuss controversial issues likely to provoke strong feelings and divergent views. At the June 22 meeting, Local 1005 took no action to deprive Thorn of her membership privileges. Indeed, Rossman never mentioned Thorn by name, nor did he comment on her harassment complaint. The fact that Thorn took offense at Rossman's hostile and skeptical attitude toward the employer's ODEO investigation does not give rise to a claim of unlawful reprisal discrimination.[3]

Second, Thorn argues that the Unions' refusal to give her routine advice about collective bargaining agreement issues unrelated to her harassment complaint constituted unlawful reprisal discrimination. We are inclined to believe that withholding assistance a union normally affords its members does satisfy the adverse-action element of a plaintiff's prima facie case. See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (refusal to process grievance unless member withdrew discrimination claim satisfies this element). However, even if Thorn presented a prima facie case in this regard, the Unions responded with a legitimate explanation -- they were acting in response to the letter from Thorn's attorney threatening litigation, demanding a substantial monetary settlement, and insisting that the attorney "be present for any communication you have with Ms. Thorn regarding this matter." Though Thorn argues the response was an over-reaction because counsel's letter was limited to "this matter," the Unions presented uncontradicted evidence that the response was made after consulting with Local 1005's attorney. Thorn presented no evidence that this legitimate reason was pretextual, and no explanation why she could

---

[3] In addition, the summary judgment record includes an August 10, 1999 letter from Rossman to an ATU vice president explaining that Rossman's caution to Local 1005 members was justified by improprieties that occurred in the 1995 ODEO investigation. Thus, the Unions argue there was a legitimate, non-discriminatory reason for Rossman's comments at the June 22 meetings. Thorn presented no evidence that this reason was a pretext for unlawful reprisal discrimination. See Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001).

not have obtained the union assistance she sought simply by bringing the communication problem to the attention of her attorney so that the two attorneys could clarify the situation.

For these reasons, we affirm the district court's grant of summary judgment dismissing Thorn's reprisal discrimination claims.

### III.  The Sexual Harassment Claims.

Thorn argues the district court erred in granting the Unions' motion to dismiss her Title VII and MHRA sexual harassment claims, a ruling we review de novo.  See Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir. 1999).  As relevant here, Title VII provides that it is an unlawful employment practice for a labor organization "(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of [her] sex [or] (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section."  42 U.S.C. § 2000e-2(c).  Though the corresponding prohibitions in the MHRA are worded differently, Minnesota courts apply substantially the same standards in construing that statute.  See Bersie v. Zycad Corp., 399 N.W.2d 141, 146 (Minn. App. 1987).

Thorn's complaint alleged that her co-workers subjected her to pervasive and unwanted sexual harassment that "substantially interfered with the Plaintiff's employment" and "created an intimidating, hostile, and offensive employment for the Plaintiff."  In other words, Thorn complained of sexual harassment that affected her employment, not her membership in the Unions or her participation in a union sponsored or controlled activity, such as the strike at issue in Dowd v. United Steelworkers of America, Local No. 286, 253 F.3d 1093, 1101-03 (8th Cir. 2001).  A labor organization is liable for an employer's discrimination in the workplace if it causes or attempts to cause the employer to discriminate, § 2000e-2(c)(3); or if the union "purposefully acts or refuses to act in a manner which prevents or obstructs a

reasonable accommodation by the employer," <u>Carter v. Chrysler Corp.</u>, 173 F.3d 693, 703-04 (8th Cir. 1999); or if the union "pursue[s] a policy of rejecting disparate-treatment grievances" meant to vindicate employee rights protected by Title VII, <u>Goodman v. Lukens Steel Co.</u>, 482 U.S. 656, 669 (1987).

Noting that Thorn's complaint "does not allege that she requested [either Union] to file a sexual harassment grievance against Metro Transit," the district court dismissed the sexual harassment claims because "Plaintiff has failed to allege conduct beyond passivity on the part of the ATU and the Local Union." Thorn argues that her complaint was sufficient to state a sexual harassment claim because "unions have an affirmative duty under Title VII and the MHRA to take remedial action to end discrimination amongst their members."

Though the Unions were prohibited from causing or assisting unlawful discrimination by Thorn's employer, nowhere in either statute do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination. <u>See, e.g.</u>, <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 95-96 (3d Cir. 1999) ("While a union may be held liable under Title VII, the record here does not demonstrate that the Union *itself* instigated or actively supported the discriminatory acts allegedly experienced by the appellants. Therefore, the Union is not liable."). Furthermore, imposing such a duty would place unions in an untenable position whenever one member accused another member of causing the employer to discriminate. "A union, unlike an employer, is a democratically controlled institution directed by the will of its constituents, subject to the duty of fair representation. Like other representative entities, unions must balance the competing claims of its constituents." <u>Goodman</u>, 482 U.S. at 688-89 (1987) (Powell, J., concurring in part and dissenting in part). When the employer investigates a sexual harassment claim by one union member against another, the union has a statutory duty to fairly represent both in their disciplinary dealings with the employer.

Here, Thorn's complaint did not allege that the Unions refused to file a grievance or otherwise assert a sexual harassment claim against Metro Transit on her behalf. Instead, the complaint alleges that, "[d]espite [] knowledge of the sexual harassment of the Plaintiff by [union] members, [the Unions] failed to take timely and appropriate remedial action." On this record, we agree with the district court that Thorn has only alleged non-actionable passive acquiescence by the Unions in the employer's allegedly unlawful failure to remedy sexual harassment. Rossman's comments at the June 22 union meetings did not amount to active participation in the alleged sexual harassment or active obstruction of a reasonable accommodation by the employer.

## IV. The Motion To Remand Issue.

Thorn commenced this action in Minnesota state court on April 3, 2000. The employer removed the case to federal court. When ATU did not join in the removal within thirty days of being served, Thorn moved to remand the case to state court. The district court denied the motion, concluding that ATU is not an indispensable party. Thorn argues the court erred in denying her motion to remand.

Removal is authorized by 28 U.S.C. § 1441 and governed by § 1446. Where there are multiple defendants, all must join in a petition to remove within thirty days of service. See Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 754 & n.2 (8th Cir. 2001). However, nominal defendants, those "against whom no real relief is sought," need not join in the petition. Pecherski v. General Motors Corp., 636 F.2d 1156, 1161 (8th Cir. 1981).

It is undisputed that ATU, the parent union, did not timely join in the removal petition. The district court determined that ATU was a nominal party and therefore denied Thorn's motion to remand. Thorn argues that ATU was not a nominal party because international unions are often held liable under agency principles for the

misconduct of their local chapters, because ATU's by-laws give it power to discipline local officers, and because Thorn brought Local 1005's alleged misconduct to the attention of ATU's president. However, all of the affirmative acts that Thorn alleges were discriminatory were committed by Local 1005 and its officers and members. ATU is not liable for those acts because Local 1005 was not acting as an agent of the international. See Laughon v. Int'l Alliance of Theatrical & Stage Employees, 248 F.3d 931, 935 (9th Cir. 2001). As for ATU's alleged failure to discipline its local chapter, we have already noted that Local 1005 has no affirmative duty to remedy discrimination by the employer. Likewise, an international union has no affirmative duty to discipline a local for failing to remedy employer discrimination. Accordingly, we agree with the district court that ATU was a nominal party for purposes of Thorn's motion to remand.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.