# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————————

Nos. 03-3888/3950

———————————

Robert Eliserio,

    Appellant/Cross-Appellee,

      v.

United Steelworkers of America
Local 310; Steve Vonk,

    Appellees/Cross-Appellants.

Appeal from the United States
District Court for the
Southern District of Iowa.

———————————

Submitted: October 21, 2004
Filed: February 24, 2005

———————————

Before BYE, BEAM, and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Robert Eliserio appeals from the district court's grant of summary judgment to United Steelworkers of America Local 310 ("Local 310") on his hostile work environment and retaliation claims under 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981, and the dismissal of his related state-law claims. Local 310 and its divisional chairman, Steve Vonk, cross-appeal the decision of the district court not to address whether Eliserio's state-law claims are preempted by federal law. For the reasons discussed below, we reverse the grant of summary judgment to Local 310 on

the hostile work environment and retaliation claims and remand for further proceedings.

## I.    BACKGROUND

Robert Eliserio is a Hispanic male who worked as a quality inspector for Firestone at its Des Moines, Iowa plant. His duties included inspecting tires and reporting production problems and poor workmanship to Firestone supervisors. Local 310 is the collective bargaining agreement representative for production and maintenance employees at the plant. Eliserio resigned his membership in Local 310 in 1995 after he crossed the picket line during a strike.

In early 1997, Johnny Bales, a Firestone employee in Eliserio's division and a Local 310 member, referred to Eliserio as "Taco Bob" in Eliserio's presence. Eliserio complained to Firestone about racial harassment, and Bales was terminated. As required by the duty of representation, Local 310 filed a grievance on behalf of Bales. As part of a larger agreement negotiated by Local 310 and Firestone, Bales was reinstated at the plant with full seniority in October 2000.

In early 2001, within a few months of Bales's reinstatement, graffiti began to appear on the walls of two restrooms near Eliserio's work area. The graffiti typically referred to "Taco Bob" and contained drawings of rats labeled "Ratelserio" or "Ratserio." Other graffiti included the phrase "a woman gave birth to a taco shaped turd and she named him Bob." Eliserio complained to Firestone supervisors that the graffiti constituted racial harassment. At Firestone's request, Steve Vonk, the Local 310 divisional chairman of Eliserio's division, spoke to members of Eliserio's shift in an effort to identify and discourage the graffiti culprits. The parties dispute the amount of effort Vonk actually put into this task. Regardless, the graffiti continued to appear regularly, and Eliserio continued to complain.

In July 2001, Vonk caused Local 310 to purchase "No Rat" stickers. The stickers, which displayed a rat in a circle with a slash through it, were distributed throughout the plant in August. Vonk claims that the stickers were meant to generally discourage employees from informing on each other to Firestone over petty matters. Eliserio, however, viewed the "No Rat" stickers as a union endorsement of the discriminatory graffiti and complained further to Firestone. Firestone ordered Local 310 to remove the stickers from all Firestone property, but Local 310 members continued to display the stickers on their personal belongings in the plant.

In September 2001, Vonk asked Firestone Assistant Labor Relations Manager Mel Hall to "somehow get [Eliserio] out of the area." In response, Firestone disqualified Eliserio from his quality inspector position and moved him to a lesser-paying job in another area. Vonk and Hall contend that the demotion was caused by Eliserio's alleged misuse of his company internet and two-way-radio privileges. However, Hall admitted that no other Firestone employee had ever been disciplined for those offenses in Hall's eight years of experience. No documentation regarding Eliserio's alleged internet and radio misdeeds was retained.

At Eliserio's request, Local 310 filed a union grievance regarding Eliserio's demotion. Firestone recognized that the reasons cited for his demotion were not listed in the collective bargaining agreement as permissible grounds. As a result, Firestone reinstated Eliserio to his former job with full back pay in December 2001. Eliserio, however, disputes whether all his authority and overtime opportunities were fully restored. The graffiti continued to appear after his reinstatement. Eliserio left Firestone in August 2002, citing stress from the continual racial harassment as the reason.

In April 2002, Eliserio filed suit against Firestone and three of its managers, the international union, Local 310 and Vonk, alleging a hostile work environment and retaliation in violation of Title VII and 42 U.S.C. § 1981, plus associated claims

under the Iowa Civil Rights Act ("ICRA"). Firestone and its managers settled. Eliserio conceded that the international union and Vonk, in his individual capacity, could not be held liable on the federal claims. The district court granted summary judgment on the federal hostile work environment claim to the sole remaining defendant, Local 310, on the grounds that Eliserio had produced no evidence to show that Local 310 instigated or actively supported the discriminatory conduct. The district court also granted summary judgment to Local 310 on the federal retaliation claim because it found no evidence to suggest an adverse action or retaliatory motive by Local 310. After dismissing the claims over which it had original jurisdiction, the district court declined to exercise supplemental jurisdiction over the ICRA claims.

## II.    DISCUSSION

We review the grant of summary judgment de novo, viewing the summary judgment record in the light most favorable to the non-moving party. *Griffith v. City of Des Moines*, 387 F.3d 733, 734 (8th Cir. 2004). We give the non-moving party the benefit of all reasonable inferences that can be drawn from the record. *Morgan v. UPS of Am., Inc.*, 380 F.3d 459, 463 (8th Cir. 2004). If the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir. 1996). However, if a reasonable jury could return a verdict for the non-moving party based on the evidence, summary judgment is inappropriate. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

Eliserio asserts that summary judgment for Local 310 was improper because he introduced credible evidence to show that Local 310 supported the actions that allegedly created a hostile work environment and that Local 310 took adverse action against him in retaliation for his complaints regarding discrimination.

## A. The Hostile Work Environment Claim

Eliserio does not claim that the union discriminated against him with respect to union membership or activities. Rather, he claims that the union discriminated against him with respect to the terms and conditions of his employment with Firestone.

Title VII and § 1981 claims alleging a hostile work environment are analyzed under an identical standard. *Elmahdi v. Marriott Hotel Services, Inc.*, 339 F.3d 645, 652 (8th Cir. 2003). "An employer violates Title VII 'if the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The claimant must show both that the offending conduct created an objectively hostile work environment and that he subjectively perceived the work environment to be hostile. *Bowen v. Mo. Dep't of Soc. Services*, 311 F.3d 878, 883 (8th Cir. 2002). Whether an environment was objectively hostile or abusive must be judged by looking at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Id.* at 884.

A union has no affirmative duty under Title VII to investigate and take steps to remedy employer discrimination. *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002). On the other hand, a union may be held liable under Title VII if "the [u]nion *itself* instigated or actively supported the discriminatory acts." *Id.* at 832-33 (quoting *Anjelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3d Cir. 1999)).

Local 310 did not argue in its summary judgment motion that Eliserio failed to produce evidence from which a reasonable jury could find that the work environment was objectively and subjectively hostile, and the district court did not reach the issue. Neither party addressed this issue before this Court. Therefore, for the purposes of this appeal, we will assume without deciding that the work environment was objectively and subjectively hostile. The issue we must address is whether Eliserio produced evidence from which a reasonable jury could find that Local 310 instigated or actively supported the hostile work environment.

Eliserio offers three bases from which a jury might conclude that Local 310 instigated or actively supported the graffiti: the likelihood that union members created the graffiti, the issuance of the "No Rat" stickers, and an affidavit by a former co-worker alleging discriminatory statements about Eliserio by Local 310 officials. We examine each in turn.

### 1.  The Likelihood That Union Members Created the Graffiti

Eliserio argues that the graffiti was almost certainly created by union members because approximately 11,950 of 12,000 employees at the Des Moines plant are union members, some of whom held a grudge against Eliserio for crossing the picket line in 1995 and causing Bales to be fired in 1997. The sole fact that union members created the graffiti, however, would not give Eliserio a Title VII claim against Local 310. Unions have no duty to take remedial action for discriminatory acts by their individual members. *See Thorn*, 305 F.3d at 832. Instead, Eliserio must show that Local 310, as an organization, "instigated or actively supported" the racially harassing graffiti. *Id.* at 832-33.

## 2. The Issuance of the "No Rat" Stickers

Eliserio contends that the union's issuance of the "No Rat" stickers supported the discriminatory graffiti campaign against him. The timing of the purchase of the "No Rat" stickers supports his claim. Vonk, in his capacity as a union official, decided to purchase and distribute the "No Rat" stickers at a time when he was well aware of the "Ratserio" graffiti and associated racial slurs. A reasonable jury could conclude that Vonk's goal was to demonstrate union support for the graffiti's discriminatory message.

Local 310 contends that the "No Rat" stickers are part of a time-honored tradition of encouraging union members not to snitch on each other for petty misbehavior. As such, they have no negative racial connotations regarding Hispanics or any other group. However, the stickers need not have a direct racial connotation to be perceived as supportive of the racially offensive graffiti campaign. *See Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003) ("[A]ll instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course of conduct which is tied to evidence of discriminatory animus.") (citation omitted). The graffiti combined derisive references to Eliserio's Hispanic heritage, such as "Taco Bob" and "taco-shaped turd," with drawings of Eliserio as a rat. A reasonable jury could find that the union-issued "No Rat" stickers were intended to be associated with the "Ratserio" drawings in the graffiti and, thus, would serve as a broad endorsement of the graffiti, including the discriminatory elements. Therefore, summary judgment for Local 310 on Eliserio's hostile work environment claim was improper.

## 3. The Osterhout Affidavit

An affidavit by former Firestone employee Robert Osterhout supports Eliserio's claim that Local 310 officials purchased the stickers to support the graffiti

campaign against Eliserio. Osterhout avers that, in the course of distributing the stickers, Local 310 executive board member Terry Welch told him the stickers were targeted at Eliserio. In addition, Osterhout claims that Vonk and Osterhout's union steward, Andy Byrkette, stated on more than one occasion that they would "stop at nothing to get rid of" Eliserio.

Local 310 asks us to discount the affidavit because of questions surrounding Osterhout's credibility, but issues of credibility are for a jury to determine. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 788 (8th Cir. 2004). Local 310 also argues that the alleged statements were inadmissible hearsay because its officials were not acting as agents of the union at the time they made the comments reported by Osterhout. *See, e.g., Erickson v. Farmland Indus.*, 271 F.3d 718, 728 (8th Cir. 2001) (noting that hearsay reported in an affidavit cannot be considered in deciding a summary judgment motion). On the contrary, Welch's statement was allegedly made while distributing the union-purchased stickers. Although Osterhout provided little context for Vonk's alleged statements, the statements were made in regard to a matter of union concern and in the presence of a union steward. Based upon the summary judgment record, we conclude that Vonk's alleged statements were made within the scope of his duties as a union official. Therefore, the statements of Welch and Vonk reported by Osterhout are not hearsay and should be considered as admissions of a party-opponent. *See* Fed. R. Evid. 801(d)(2).

The Osterhout affidavit supports Eliserio's claim that a genuine issue of material fact exists as to whether Local 310 officials purchased the stickers to support the discriminatory graffiti campaign. We conclude that Eliserio produced evidence from which a reasonable jury could find that Local 310 actively supported the allegedly hostile work environment.

**B.     The Retaliation Claim**

Eliserio claims that Local 310 retaliated against him for complaining to Firestone about the racially offensive graffiti.  Neither party has addressed the issue of Eliserio's statutory standing to bring this claim against a labor organization under 42 U.S.C. § 2000e-3(a).  Therefore, for the purposes of this appeal, we will assume without deciding that Eliserio has statutory standing.

To analyze a claim of retaliation under Title VII, we apply the *McDonnell Douglas* three-part burden shifting analysis.  *Thorn*, 305 F.3d at 830.  Absent direct evidence of discrimination, we ask first whether the plaintiff presented a prima facie case of retaliation, next whether the defendant rebutted the resulting presumption of retaliation by advancing a legitimate reason for its challenged behavior, and finally whether the plaintiff refuted the defendant's proffered reason with sufficient evidence of pretext.  *Id.*

**1.  Prima Facie Case**

To make a prima facie case of retaliation against an employer, a claimant must show that (1) he engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct.  *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).  The district court concluded that Eliserio did not establish the second and third elements.

The analysis changes slightly when the retaliation defendant is a labor organization, rather than the plaintiff's employer.  Because unions often do not have the authority to subject a represented employee to an adverse *employment* action, we

have held that any meaningful adverse action is sufficient when the retaliation defendant is a union. *Thorn*, 305 F.3d at 830-31.

In this case, it is undisputed that Eliserio complained to Firestone of racial harassment, satisfying the first element. It is also undisputed that Vonk, acting in his capacity as a Local 310 official, asked Firestone to "somehow get [Eliserio] out of the area." Firestone relied on Vonk's complaint and demoted Eliserio. We believe that Vonk's complaint constituted a meaningful adverse action.

The only remaining element of a prima facie case is a causal link between Eliserio's complaints of racial harassment and Vonk's complaint to Firestone. A plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004). Generally, however, a temporal connection alone is not sufficient to establish a causal connection. *Id.*

Eliserio repeatedly complained of racial harassment from early 2001, when the graffiti began to appear, until Vonk's complaint in September 2001. This temporal connection supports an initial inference of causation. In addition, Vonk admitted that as a result of Eliserio's complaints of racial harassment to Firestone, he was forced to devote significant time to investigating and attempting to remedy the ongoing graffiti situation. Vonk stated that as a result of his uncompensated overtime work on union business, he often was forced to forgo opportunities for paid overtime. A reasonable jury could infer that Vonk's attempt to have Eliserio removed from his area was motivated by Vonk's desire to avoid the drain on his time caused by Eliserio's continuing complaints of racial harassment. This inference would provide the necessary causal link between Eliserio's complaints of racial harassment and Vonk's complaint to Firestone. Therefore, we conclude that Eliserio presents a prima facie case of retaliation.

-10-

## 2. Pretext

Local 310 claims that Vonk's attempt to remove Eliserio from his area was motivated by Eliserio's abuse of internet privileges and his use of the company two-way radio to eavesdrop on supervisors and report employee misbehavior. However, a reasonable jury could find that this explanation for Eliserio's demotion is mere pretext.

Vonk had allegedly made five earlier complaints to Firestone about Eliserio's misuse of his radio since approximately 1998. However, Eliserio was not disciplined for, nor even informed of, any of these earlier complaints. In fact, Firestone management admitted that no other employee had been disciplined for internet or radio misuse in the previous eight years. Local 310 cannot explain why Firestone, which apparently had considered previous complaints about radio and internet misuse so insignificant that it did not even bother to inform Eliserio of a problem, suddenly took the severe step of demoting Eliserio for such a complaint. A reasonable jury could infer that Vonk's September 2001 complaint involved something more than the regularly ignored complaints about radio and internet misuse.

Local 310 contends that because Vonk immediately filed a grievance on Eliserio's behalf and gained Eliserio reinstatement with full back pay, no jury could conclude that Vonk's original goal was to retaliate against Eliserio. However, Vonk was bound by union policies to file the grievance, and Firestone had to reinstate Eliserio because the reasons cited for his demotion were not listed in the collective bargaining agreement as permissible grounds.

We conclude that a reasonable jury could find that Local 310's proffered nondiscriminatory reason for Vonk's action against Eliserio was pretextual. Therefore, summary judgment for Local 310 on the retaliation claim was improper.

## C.  State Law Claims

After granting summary judgment on the federal law claims, the district court declined supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3).  Because we reverse and remand the federal law claims, the district court must reconsider its supplemental jurisdiction over the associated state law claims. Therefore, we need not address the cross-appeal by Local 310 and Vonk.

## III.  CONCLUSION

We reverse the district court's grant of summary judgment to Local 310 on Eliserio's Title VII and 42 U.S.C. § 1981 hostile work environment and retaliation claims and remand for further proceedings consistent with this opinion.

_____