IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2019 Session

## BOBBY BAILEY JR., ET AL. v. U.S.F. HOLLAND, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 13C5077     Joseph P. Binkley, Jr., Judge**

_____

**No. M2018-01674-COA-R3-CV**

_____

This suit was brought under the Tennessee Human Rights Act by two African-American employees against their employer and their union to recover for alleged discrimination that created a hostile work environment.  At issue in this appeal is the grant of summary judgment to the union on the basis that it did not cause or attempt to cause the employer to discriminate.  Upon our *de novo* review, we conclude that the evidence presented at the summary judgment stage negated an essential element of the Plaintiffs' claim and thus summary judgment was warranted.  Judgment affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J.,[1] delivered the opinion of the court, in which W. NEAL MCBRAYER, J., joined.  RICHARD H. DINKINS, J., not participating.

Ann Buntin Steiner, Nashville, Tennessee, for the appellants, Bobby Bailey, Jr., and Robert O. Smith.

Samuel Morris and Timothy Taylor, Memphis, Tennessee, for the appellee, Teamsters Local Union No. 480.

Rodrick Darnell James Holmes, Memphis, Tennessee, for U.S.F. Holland, Inc. (not participating).

---

[1] This case was reassigned to the authoring judge.

# OPINION

## Background

Plaintiffs, Bobby Bailey, Jr., and Robert O. Smith, are African-American employees of U.S.F. Holland, Inc. ("U.S.F. Holland"), a Michigan-based trucking company with a terminal in Nashville, Tennessee. Both Mr. Bailey and Mr. Smith have worked for U.S.F. Holland as dock workers and truck drivers, Mr. Bailey since 1990 and Mr. Smith since 1997. Both men are also members of Teamsters Local Union No. 480 ("the Union"), which represents some of U.S.F. Holland's employees. U.S.F. Holland and the Union are parties to a collective bargaining agreement called the National Master Freight Agreement and the Southern Region Area Supplemental Agreement. This agreement was negotiated by the International Brotherhood of Teamsters and Trucking Management Incorporated, a group of trucking companies that includes U.S.F. Holland.

In 2007, Mr. Bailey and Mr. Smith successfully sued U.S.F. Holland for maintaining a hostile work environment due to racially discriminatory actions of fellow employees. Despite the outcome in that suit and sensitivity training provided by U.S.F. Holland, the harassment by certain employees continued. When they were called inappropriate names and whistled at, as if to call a dog, both Mr. Bailey and Mr. Smith reported the incidents to their supervisors. On May 24, 2012, Mr. Bailey complained to his supervisor that another employee, Mr. Delton Hassell, had been whistling at him in a discriminatory manner. The supervisor and another manager had a meeting with Mr. Hassell, during which Mr. Hassell used a racial slur in reference to Mr. Bailey. Mr. Hassell's employment was immediately terminated on the basis of his "outrageous conduct," as memorialized in a discharge letter. Mr. Hassell is a member of the Union, which filed a grievance on Mr. Hassell's behalf, pursuant to the collective bargaining agreement, protesting his termination. As a result of the grievance procedure, which was not resolved at the local level and thus proceeded to the Southern Regional Multistate Grievance Committee, Mr. Hassell was reinstated to his employment, without back pay. Mr. Hassell was terminated again for comments he made in November 2013. Once again, the Union initiated the grievance procedure on Mr. Hassell's behalf, and he ultimately was reinstated.

While the Union was contesting Mr. Hassell's second termination, Plaintiffs filed this suit in the Circuit Court for Davidson County ("the Trial Court") on December 12, 2013, against U.S.F. Holland and the Union under the Tennessee Human Rights Act, Tennessee Code Annotated section 4-21-101, *et seq*. The Plaintiffs alleged, *inter alia*, that "[e]ven after a federal district court found [U.S.F. Holland] had allowed a hostile work environment to exist, [U.S.F. Holland] continued to allow this racially hostile environment to exist." With respect to the Union, the complaint, as amended, alleged:

2

15. On May 6, 2012, the Teamsters Local Union 480 filed a grievance on behalf of Hassell protesting his discharge. The Teamsters knew of the history of the Defendant engaging in discrimination and knew Hassell was investigated for engaging in racial harassment and was fired for his racial comments in the meeting with Knight and West.

\*\*\*

24. In November 2013, Plaintiffs were summoned to a local hotel for questioning by an attorney. Plaintiffs responded to all questions. Defendant then re-fired Hassell.
25. It is believed the Defendant Union filed a grievance to once again reinstate Hassell.

\*\*\*

28. Plaintiffs, Bailey and Smith, would state that [U.S.F. Holland] and the Local Union created a hostile work environment for the Plaintiffs based upon their race in violation of the Tennessee Human Rights Act. The Local Union by filing a grievance and pursuing the grievance on behalf of an employee fired for racial discrimination and/or acts, caused or attempted to cause the employer to violate the THRA.

The Local Union by filing the grievance and pursuing the grievance on behalf of an employee fired for racial discrimination and/or acts, discriminated against the Plaintiffs and caused the employer to discriminate against Plaintiffs.
29. Plaintiffs would state the Defendants engaged in retaliation in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* and § 4-21-301, *et seq.*

In due course, U.S.F. Holland and the Union separately moved for summary judgment. Because it was unclear from the complaint precisely what type of discrimination claim the Plaintiffs wished to make, the Union addressed every conceivable claim to demonstrate that summary judgment was warranted. The Union's motion asserted that there was no genuine dispute of material fact that (1) the Union did not breach its duty of fair representation, (2) that it did not engage in intentional discrimination against the Plaintiffs directly or by causing or attempting to cause U.S.F. Holland to do so, and (3) that it did not retaliate against the Plaintiffs. Following a hearing, the Trial Court granted U.S.F. Holland's motion in part and denied it in part; by agreed order memorializing the settlement of Plaintiffs' claims against their employer, U.S.F. Holland later was dismissed from the suit and is not a party to this appeal. The Trial Court granted the Union's motion for summary judgment, holding:

3

So the Plaintiffs' position is that because the Union took [Hassell's] grievance, that caused or attempted to cause U.S.F. Holland to violate the chapter, which means to discriminate against the Plaintiffs. . . .

I am of the opinion that there are no facts in this record that will allow me to conclude that the Union intentionally caused or attempted to cause the employer to violate this chapter by taking the grievance -- grievances of [Hassell] because the Union takes all grievances. If they take all grievances, how can I conclude in any way that there is any inference here that the Union in this case, in the Bailey and Smith cases, intentionally attempted to cause the employer to discriminate by taking his grievance. I'm sorry, I just don't see that being a possibility or even a probability.

Plaintiffs timely appealed to this Court the Trial Court's grant of summary judgment to the Union.

## Discussion

On appeal, Plaintiffs present the following issues for review, which we quote verbatim:

1.  The Trial Court erred in finding the Union does not violate the Tennessee Human Rights Act by filing a grievance for an employee fired for racial discrimination.
    a.  There is no legal obligation for the Union to pursue all grievances.
2.  Limiting evidence at the grievance hearings to events which occurred within a six month period from the date of termination, and only for events for which warning letters had been issued, conflicts with hostile work environment case law.
3.  The Union Job Steward instigated or actively supported discriminatory acts by presenting a false statement in support of the racial harasser's first grievance.

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In *Rye v. Women's Care Ctr. of Memphis, MPLLC*, our Supreme Court adopted the following standard when considering a motion for summary judgment filed by the party who does not bear the burden of proof at trial, as is the Union in this case:

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of

4

production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. . . .

477 S.W.3d 235, 264-65 (Tenn. 2015) (emphasis in original), *cert. denied,* 136 S. Ct. 2452, 195 L. Ed. 2d 265 (2016). "Whether the nonmoving party is a plaintiff or a defendant— and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

This court reviews a trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye,* 477 S.W.3d at 250 (citing *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

The Tennessee Human Rights Act was passed to prohibit discrimination in a manner consistent with the Federal Civil Rights Acts. Tenn. Code Ann. § 4-21-101(a)(1). Chapter 21 of Title 4 of the Tennessee Code embodies the legislative intent to, *inter alia*, prohibit discrimination on the basis of race by employers and labor organizations and to provide a remedy for such discrimination. Tenn. Code Ann. § 4-21-101. Plaintiffs contend that, by filing the two grievances on behalf of the terminated employee, the Union "caused or attempted to cause the Employer to violate the THRA by creating a hostile work environment" and thereby violated Tennessee Code Annotated section 4-21-402(3). That section is specific to labor organizations such as the Union and states:

It is a discriminatory practice for a labor organization to:

(1) Exclude or expel from membership, or otherwise to discriminate against a member or applicant for membership because of race, creed, color, religion, sex, age or national origin;

(2) Limit, segregate, or classify membership or application for membership or to classify or fail or refuse to refer for employment on the basis of race, creed, color, religion, sex, age or national origin, in a manner that would deprive or tend to deprive any person of employment opportunities, or that would limit employment opportunities or to otherwise adversely affect the status of an employee or of an applicant for employment because of race, creed, color, religion, sex, age or national origin; or

(3) Cause or attempt to cause an employer to violate this chapter.

Tenn. Code Ann. § 4-21-402 (2015).  There are no Tennessee cases addressing subsection (3).  The language in the federal counterpart is similar, and in *Braxton v. UAW Int'l*, the district court stated:

> A union may be liable for a hostile work environment if the plaintiff could show (1) he was subjected to a hostile work environment by his employer . . . ; (2) he requested the union take action; and (3) the union ignored his request for action.  *See, e.g.*, *Slater v. Susquehanna Cnty.*, 613 F.Supp.2d 653, 664 (M.D. Pa. 2009).  Moreover, a union may be liable under Title VII if the union causes or attempts to cause an employer to discriminate, or if it prevents an employer from fulfilling its statutory responsibilities. *Carter v. Chrysler Corp.*, 173 F.3d 693, 703 (8th Cir. 1999).  In other words, a union may only be liable if it instigates an employer's discrimination or actively supports the employer's discriminatory acts. *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1076-77 (8th Cir. 2005).

No. 14-CV-12063, 2016 WL 28825, at *10 (E.D. Mich. Jan. 4, 2016).  In this case, Plaintiffs would need to establish that the Union caused or attempted to cause U.S.F. Holland to discriminate by instigating or actively supporting the creation of a hostile work environment at U.S.F. Holland.

A hostile work environment occurs when "conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  In *Frye v. St. Thomas Health Servs.*, this Court explained that to establish a hostile work environment claim, a plaintiff must show:

6

(1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the employee, such as age; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such an environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002). A hostile work environment claim is established upon proof of conduct that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB,* 477 U.S. at 67, 106 S.Ct. 2399 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982)).

227 S.W.3d 595, 602 (Tenn. Ct. App. 2007). Despite Plaintiffs' assertions in their reply brief that the Union should bear the burden of proof on this claim, section 4-21-311(e) places that burden squarely on Plaintiffs; it provides:

> In any civil cause of action alleging a violation of this chapter or of § 8-50-103, the plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination or retaliation raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of intentional discrimination or retaliation.

Tenn. Code Ann. § 4-21-311(e) (2015).

With the foregoing framework in mind, there is no real dispute that the Plaintiffs were part of a protected class due to their race, that they were subjected to unwelcome harassment, that they were harassed because of their race, and that the harassment was severe enough to constitute a discriminatorily abusive work environment. The fifth element is in play in this case: whether the Union's actions in turn caused the employer to discriminate by having the offending employee reinstated.

We turn to the materials filed in support of the Union's motion. The Union filed a Statement of Undisputed Facts, pursuant to Tennessee Rule of Civil Procedure 56.03, which was supported by the depositions of Howard Boykin, Secretary of Teamsters Local 480; Douglas Morris, terminal manager of Nashville U.S.F. Holland facility; Stephen Blubaugh, U.S.F. Holland's Vice President of Human Resources; Plaintiff Bobby Bailey, Jr.; Plaintiff Robert Smith; Ricky Burton, union steward; and Delton Hassell, the employee who was terminated.

The evidence put forth by the Union shows that terminated employees may go to the Union to file a grievance to protest his or her discharge; that the Union had a practice of appealing the termination of a union employee who desired to do so through the procedure established in the collective bargaining agreement; that Mr. Hassell filed grievances over his two terminations; and that the grievances made their way through the process set forth in the collective bargaining agreement and were resolved by a committee of neutral employer and union representatives, resulting in the employee's reinstatement. These facts demonstrate that the Union's actions with respect to grievance proceedings were the same; the race of the disciplined employee (or the victim) and the employee's action that resulted in discipline had no bearing on the decision of whether or not to pursue a grievance. This proof negated the core element of section 4-21-402(3) by showing no proof of intentional discrimination on the part of the Union against the Plaintiffs directly or through the employer; these materials shifted the burden to the Plaintiffs to introduce evidence that would establish a genuine issue of material fact.

Plaintiffs responded to the motion, attempting to illustrate that several statements were disputed. They supported their position by filing a host of exhibits, which included affidavits and depositions of each plaintiff; depositions of various employees, union and U.S.F. Holland officials, as well as documents from the federal lawsuit and the grievance proceedings. Plaintiffs also filed a statement of additional material facts, to which the Union subsequently responded.

The uncontested facts show that in May 2012 Mr. Bailey made a complaint to U.S.F. Holland staff that Mr. Hassell whistled at him in a taunting manner; that Mr. Hassell was called in for a meeting with Mr. West and Mr. Knight to discuss his actions, and requested that Mr. Burton, the Union steward, accompany him to the meeting; that, in the course of the meeting, Mr. Hassell made reference to Mr. Bailey as a "black bastard"; that Mr. Burton had not yet arrived at the meeting when Mr. Hassell made the remark; that Mr. Burton later made a written statement in which he said "Mr. Hassell did not make any racial remarks towards Mr. Bailey nor towards Mr. West or anyone else"; that Mr. Hassell was terminated for making a derogatory remark in violation of U.S.F. Holland's harassment policy; that the Union represented Mr. Hassell through the proceeding in which Mr. Hassell challenged his termination; and that Mr. Bailey requested from the Union an explanation for Mr. Hassell's reinstatement, and was advised that the reasons for Mr. Hassell's rehire were

explained in a letter U.S.F. Holland wrote to Mr. Bailey in response to a letter that Mr. Bailey wrote to the U.S.F. Holland management team complaining of Mr. Hassell's rehire.

The undisputed facts also show that the Union represented Mr. Hassell at grievance hearings, which were decided before the neutral Joint Area Grievance Committee; these proceedings resulted in his reinstatement. The Rules of Procedure for the grievance process require that neither U.S.F. Holland, as the employer, nor the Union's representative can serve on a committee that would adjudicate Mr. Hassell's grievance hearings.[2] Therefore, Mr. Hassell's reinstatement was a decision made by a third party, not the Union or U.S.F. Holland.

The proof set forth by the Plaintiffs at the summary judgment stage does not demonstrate that the Union engaged in racially discriminatory actions; to the contrary, the undisputed proof indicates that the Union has a policy of representing all terminated union members in the grievance process who wish to contest their terminations, regardless of that employee's race and regardless of the offense that resulted in their termination.

Though emphatic that they are pursuing a hostile work environment claim, Plaintiffs also argue that section 402 "is violated by a union when it is aware of racial discrimination against some of its members and fails to protect their interests." This latter statement evinces the Plaintiffs' position the Union is violating its duty of fair representation by taking Mr. Hassell's termination through the grievance procedure despite the racist behavior he exhibited. "[A] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is *arbitrary, discriminatory, or in bad faith*." *Wells v. Chrysler Grp. LLC*, 559 Fed. Appx. 512, 514 n. 1 (6th Cir. 2014) (quoting *Bowerman v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., Local No. 12,* 646 F.3d 360, 368 (6th Cir. 2011)) (emphasis in original). While unions certainly are permitted to exercise some discretion in which grievance actions to pursue on behalf of their members, the undisputed facts in this case establish that the Union has elected to pursue a grievance procedure for every terminated union employee who requests it. By removing any discretion in deciding for which cases it pursues grievance proceedings, the Union cannot be said to be acting in a way that is arbitrary, discriminatory, or in bad faith. Just because Mr. Hassell's actions were reprehensible does not mean that he is not entitled to the protections (referred to as "industrial due process" in the record) afforded to him by his union membership. Moreover, the Union's representation of Mr. Hassell through the grievance process did not, *ipso facto*, result in his reinstatement. His return to the workforce was the result of a decision by a neutral committee. If Plaintiffs wish to allege that the grievance process itself

---

[2] The Rules of Procedure for Conduct of Grievance Proceedings by the Southern Region Joint Area Grievance Committee states, in part pertinent to this issue: "No Union or Employer Representative may serve in any capacity on a Southern Region Joint Area Committee or the Southern Region Joint Area Review Committee in any hearing of a case involving their own Union or Company."

is laced with ineffective procedures that are resulting in the reinstatement of worker(s) who harass and cause a hostile work environment, then they should have also sued that organization and placed its operating procedures at issue as fostering an unreasonable, abusive, or offensive work-related environment. That, however, is not what was alleged in this lawsuit.

Although Plaintiffs argue that filing a grievance on behalf of an employee who was terminated for admittedly racist actions somehow imputes a racist intent to the Union and causes discrimination, we fail to see how a Union's decision to pursue a grievance proceeding for every terminated union employee wishing to contest her termination can be construed as intentional racism. Moreover, it seems that such a claim would be better brought under section 4-21-402(1), as it is difficult to discern an action on the part of the Union that caused U.S.F. Holland to discriminate. The Union's action in representing the employee did not cause the employer, U.S.F. Holland, to violate the Tennessee Human Rights Act within the meaning and purpose of the statute. We find this issue to be without merit.

Plaintiffs present two other issues for review. They contend that because the Union and U.S.F. Holland limit evidence at grievance hearings to events that occurred within a six-month period prior to the termination, the limitation prevented the grievance committees from hearing evidence of a hostile work environment occurring over a long period of time.

The Rules of Procedure for Conduct of Grievance Proceedings provide in pertinent part:

> [N]o evidence will be heard in a case except the evidence pertaining to a particular complaint before the committee, but evidence of offenses for which warning letters have been given within six (6) months may be introduced as pertinent to a particular case at the hearing before the Multi-State Committee, other than discharge or suspension.

Additionally, the collective bargaining agreement includes the following provision:

> ARTICLE 46. DISCHARGE OR SUSPENSION
> Section 1.
>
> The Employer shall not discharge, suspend or take any other disciplinary action as respects any employee without just cause, but in respect to discharge, suspension, or other disciplinary action shall give at least one (1) warning notice of the complaint against such employee to the employee in writing by certified mail and/or in person and a copy of same to the Union affected, by certified mail; except that *no warning notice need be given to an employee*

10

*before he/she is discharged if the cause of such discharge is:* dishonesty; using or being under the influence of alcoholic beverages, narcotics, or drugs while on duty; failure to submit to a sobriety/drug test, upon request, if the employee appears to be under such influence; carrying or permitting the carrying of drugs or narcotics on the employee's person or equipment that is prohibited by state or federal law, possession of alcoholic beverages, drugs or narcotics on Company property or equipment, drinking alcoholic beverages, using drugs or narcotics on Company property; a serious preventable accident while on duty, the carrying of unauthorized passengers; the failure to report an accident; willful damage or destruction of company property or equipment; engaging in unprovoked physical violence while on Company property or on duty; *outrageous conduct as determined by the Grievance Committee,* or failure to comply with Article 35, Section 3 of the National Master Freight Agreement.

The warning notices as herein provided shall not remain in effect for a period of more than six (6) months from the date of said warning notice.

(Emphasis added). Mr. Hassell's discharge letters, in both instances, state that Mr. Hassell's termination was the result of his "outrageous conduct and violation of Holland's Policy on Harassment…." Under the collective bargaining agreement, U.S.F. Holland was not required to issue a warning notice to Mr. Hassell after he made the offensive comment, as it constituted outrageous conduct. Thus, there was no need for a warning notice pertaining to his racially-motivated comments to be placed in his employment file.

Further, neither was this an issue Plaintiffs articulated in their complaint or with a cross motion for summary judgment, nor was it ruled upon by the Trial Court. The only place Plaintiffs articulated these concerns was buried in its response to the Union's motion for summary judgment. Plaintiffs are, in effect, asking this Court to modify the rules governing the procedures of an entity not before this Court. If Plaintiffs wish to allege that the grievance process itself is laced with ineffective procedures that are resulting in the reinstatement of worker(s) who harass and cause a hostile work environment, then Plaintiffs should have raised that issue in their complaint. Despite amending their Complaint, that is not what was alleged in this lawsuit. We therefore consider this issue to be without merit.

The final issue Plaintiffs raise is whether "[t]he Union Job Steward instigated or actively supported discriminatory acts by presenting a false statement in support of the racial harasser's first grievance." Plaintiffs allege that, on three occasions, the Union submitted to the grievance hearing committee a "false statement" made by Mr. Burton, the union job steward who initially investigated the incident. In the statement, he denied that Mr. Hassell made a racial slur towards Mr. Bailey during a meeting between him, Mr. Hassell, and two representatives of U.S.F. Holland, Messrs. Knight and West. The

11

statement also says that Mr. Hassell "denied these charges [of whistling at a coworker] in a calm and professional manner" and referred to Mr. Bailey as "the man" and did not make any racial remarks toward Mr. Bailey in Mr. Burton's presence. However, the parties agree that Mr. Burton admitted he did not hear all of the conversation and that the meeting was already in progress when he got there. At bottom, Mr. Burton's statement paints Mr. Hassell in a light with which the Plaintiffs disagree, and they take issue with the fact that the Union submitted the statement as an exhibit at the grievance hearings.[3] Also presented as evidence during the grievance hearing was Mr. Hassell's own admission at an unemployment compensation hearing, corroborated by Messrs. Knight and West, that he called Mr. Bailey a "black bastard." With Mr. Hassell's own admission presented at the grievance hearings, and no citation to any proof by Plaintiffs that the Committee actually saw or gave any weight to Mr. Burton's statement, there is no proof before us from which to conclude that Mr. Burton's statement had any effect on the outcome of the hearings which resulted in Mr. Hassell's reinstatement. Plaintiffs' contentions in this regard are without merit.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Bobby Bailey, Jr. and Robert O. Smith, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[3] It is not apparent from the pages of minutes from the grievance proceeding cited by Plaintiffs whether the Burton statement was made an exhibit to that proceeding, but the testimony transcribed in those minutes makes it abundantly clear that the Union representative communicated precisely what racial slur Mr. Hassell used and did not base his argument in any way on the Burton statement.