Edward J. PLUNKETT

v.

STATE of Rhode Island.

No. 2003–473–M.P.

Supreme Court of Rhode Island.

March 10, 2005.

Bernard P. Healy, Providence, for Plaintiff.

James R. Lee, Providence, for Defendant.

Present: GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

This employment discrimination case came before the Supreme Court on February 3, 2005, pursuant to a petition for certiorari filed by the petitioner, the State of Rhode Island (petitioner or state), seeking review of a Superior Court order denying its motion for summary judgment. The petitioner had moved for summary judgment, asserting that the claim of the respondent, Edward J. Plunkett (Plunkett or respondent), was barred by the doctrine of res judicata. The petitioner contended that Plunkett had the opportunity to litigate his discrimination claim in his previous wrongful termination action, *Plunkett v. State*, 810 A.2d 787 (R.I.2002) (*Plunkett I*), and challenges, before this Court, the motion justice's determination that the respondent's claim is not precluded by principles of res judicata. For the reasons set forth herein, we grant the petition for certiorari and quash the order of the Superior Court.

## Facts and Travel

The pertinent facts giving rise to *Plunkett I* and this case are identical. In 1978, respondent began his employment with the state when he was appointed director of the Statewide Judicial Information System (SJIS). He later was appointed to the position of executive director of SJIS and served in that capacity until he was terminated. On March 1, 2001, the Chief Justice of the Rhode Island Supreme Court (Chief Justice) notified respondent, by letter, that his employment would be terminated as of April 1, 2001.

The Chief Justice's letter prompted Plunkett to file a wrongful termination action in Superior Court on March 27, 2001, seeking declaratory and injunctive relief. Plunkett argued that he could be discharged only for cause because he had reached the milestone of twenty years of state employment while in the position of executive director of SJIS. *See* G.L.1956 § 36-4-59 (granting full status to state employees with twenty years of service). The suit was expedited by agreement of the parties, who submitted it to the Superior Court on memoranda in early May 2001. On or about July 5, 2001, the Superior Court justice denied respondent's claim for injunctive relief.

Plunkett promptly appealed to this Court, and on December 5, 2002, the decision of the Superior Court was affirmed. *Plunkett I*, 810 A.2d at 790. We held that the executive director of SJIS is an assistant to the Court Administrator, within the meaning of G.L.1956 § 8-15-4(a), and therefore, serves at the pleasure of the Chief Justice, § 36-4-59 notwithstanding.

*Plunkett I*, 810 A.2d at 789; *see also* § 8–15–4(a) ("The [C]hief [J]ustice shall appoint a [C]ourt [A]dministrator and such assistants as he or she deems necessary to aid in the administration of the judicial system.").

On November 14, 2001, while his appeal was pending, Plunkett filed a second complaint in the Superior Court, this time alleging age and disability discrimination. The state moved to dismiss respondent's complaint under principles of res judicata. The motion was denied on the condition that respondent file an amended complaint within twenty days stating a claim for relief under the Rhode Island Fair Employment Practices Act, G.L. 1956 chapter 5 of title 28 (FEPA). The respondent timely filed an amended complaint alleging that he had asserted a claim of discrimination with the Rhode Island Commission for Human Rights (RICHR or commission) on April 23, 2001, and obtained a right-to-sue letter from the commission on or about October 30, 2001. *See* § 28–5–24.1 (requiring claimants to obtain the right to sue from the commission before filing a complaint under FEPA in the Superior Court).

The state's motion for summary judgment on the amended complaint, based on res judicata, was denied on August 26, 2003. The motion justice explained that res judicata did not apply because Plunkett's two complaints did not allege the same operative facts. We granted certiorari to review the motion justice's order, and the Superior Court stayed its proceedings pending our disposition of the matter.

## Standard of Review

■ When we grant certiorari to review the denial of a motion for summary judgment, our review is governed by the same standard of review that applies to a grant of summary judgment. *McKinnon v. Rhode Island Hospital Trust National Bank*, 713 A.2d 245, 247 (R.I.1998). This Court reviews a grant of summary judgment on a *de novo* basis, with the contours of our review shaped by the same standards that apply to a trial justice. *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I. 2002) (citing *M & B Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001) and *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)). Summary judgment is an extreme remedy and should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." *Wright v. Zielinski*, 824 A.2d 494, 497 (R.I.2003) (quoting Super.R.Civ.P. 56(c)).

## Discussion

The petitioner argues that respondent could have included his discrimination claim in the original suit and should not be permitted to circumvent the doctrine of res judicata merely by seeking different relief or arguing a different legal theory. The respondent counters that res judicata does not preclude him from litigating the discrimination issues, and furthermore, that he could not have included a claim for discrimination in his previous suit.

■ The doctrine of res judicata relates to the preclusive effect of a final judgment in an action between the parties. *Foster–Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1014 n. 2 (R.I.2004) (citing *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I.1994)). "This doctrine ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit." *ElGabri v. Lekas*, 681 A.2d 271, 275 (R.I.1996) (quoting *Gaudreau v. Blasbalg*, 618 A.2d 1272, 1275

(R.I.1993)). The doctrine applies when "there exists identity of parties, identity of issues, and finality of judgment in an earlier action." *Beirne v. Barone,* 529 A.2d 154, 157 (R.I.1987).

■ The parties do not dispute the existence of identity of parties or finality of judgment in the original lawsuit. The respondent alleges that his claim is not precluded by the judgment in the original suit, however, because identity of issues does not exist. We, therefore, focus our analysis on the identity of issues prong of the res judicata analysis.

As we recently explained, the term "res judicata" is commonly used to refer to two preclusion doctrines: (1) collateral estoppel or issue preclusion; and (2) res judicata or claim preclusion. *Foster–Glocester Regional School Committee,* 854 A.2d at 1014 n. 2 (citing 1 Restatement (Second) *Judgments* ch. 1, Intro. at 1, 2 (1982) and *E.W. Audet & Sons, Inc.,* 635 A.2d at 1186). In *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the United States Supreme Court discussed the preclusion terminology and elected to use the term "claim preclusion," instead of res judicata, to avoid confusion. The Court explained:

"The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata.' See Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue

preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *See* Restatement, *supra,* § 27. * * * Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. *See id.,* Introductory Note before § 24." *Migra,* 465 U.S. at 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56.

■ Although issue preclusion generally operates to bar relitigation of only those issues that *actually* were decided in the prior lawsuit, it may even apply when the second lawsuit asserts a different claim. *Foster–Glocester Regional School Committee,* 854 A.2d at 1014 n.2. Claim preclusion, on the other hand, " 'precludes the relitigation of *all* the issues that were *tried or might have been tried* in the original suit.' " *Id.* (Emphasis added.)

This Court considered the question of what constitutes a "claim" for purposes of claim preclusion in *ElGabri* and adopted the transactional rule set forth in the Restatement (Second) *Judgments. ElGabri,* 681 A.2d at 276. Section 24 of the Restatement provides:

**"Dimensions of 'Claim' for Purposes of Merger or Bar–General Rule Concerning 'Splitting'**

"(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim * * * *the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.*

"(2) What factual grouping constitutes a 'transaction'[ ] and what groupings constitutes a 'series'[ ] are to be determined pragmatically, *giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.*" (Emphases added.)

The Restatement explains that "[t]he present trend is to see [a plaintiff's] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff." *Id.* § 24 at cmt. *a.*

The plaintiff in *ElGabri* contended that the defendants sabotaged his attempt to obtain staff privileges at certain local hospitals. *ElGabri*, 681 A.2d at 273. He filed a complaint in Superior Court alleging, "inter alia, libel, slander, emotional distress, and tortious interference with prospective business relations." *Id.* The plaintiff later amended the complaint to include violations of state antitrust law. *Id.* While the state action was pending, the plaintiff filed an action in the United States District Court for the District of Rhode Island, alleging tortious interference with prospective business relations and violations of federal and state antitrust laws. *Id.* at 274. The federal suit was reached for trial first, and the jury returned verdicts for the defendants. *Id.* Subsequently, a justice of the Superior Court granted summary judgment in favor of the defendants, holding that all of the claims raised in the state action were barred under the doctrine of res judicata. *Id.* at 275. This Court affirmed, reasoning that the alleged pattern of conduct intended to keep the plaintiff out of his chosen field was the driving force behind all of his claims, federal and state, including the emotional distress and defamation claims. *Id.* at 278, 280.

Here, it is clear that respondent's two lawsuits arose out of the same transaction or series of transactions, to wit, his termination from employment with the Supreme Court. Our analysis is not affected by the fact that the original lawsuit did not address the Chief Justice's rationale for dismissing Plunkett. *See ElGabri*, 681 A.2d at 276 ("[A]pplication of the Restatement approach has been said to extinguish a plaintiff's claim against a defendant even though the plaintiff would be prepared in a second action to present evidence or grounds or theories of the case not presented * * * in the first action, or to seek remedies or forms of relief not demanded in that action."). Just as the allegedly defamatory remarks in *ElGabri* made up the factual grouping from which all the claims arose, here, the Chief Justice's letter to Plunkett and respondent's subsequent termination form the core of the relevant factual grouping of both lawsuits. The respondent's opportunity to delve into the Chief Justice's reasons for discharging him came and went when his original suit was decided.[1] As the state argued to this Court, res judicata is bigger than the litigants or, indeed, the issues Plunkett attempts to litigate.

■ Having determined that the general rules of res judicata are satisfied, we

---

1. The respondent's reliance on *Nardolillo v. Carroll*, 70 R.I. 383, 38 A.2d 781 (1944), is misplaced. In *Nardolillo*, this Court held that only those issues actually litigated in a previous action were barred from relitigation in a subsequent action. *Id.* at 384, 38 A.2d at 781. We issued that holding in the context of an assumption that the causes of action in both lawsuits were different and, therefore, issue preclusion applied, not claim preclusion. *Id.*

turn to the question of whether respondent somehow is entitled to an exemption from the operation of the doctrine. The respondent contends that the different policies behind the statutory right asserted in his first lawsuit and his FEPA claim in the second lawsuit warrant an exemption from the bar of res judicata. In addition, respondent asserts that his discrimination claim should not be barred because procedural barriers prevented him from including it in the original lawsuit. We are not convinced that the circumstances surrounding respondent's FEPA claim warrant an exception.

The Restatement recognizes an exception for situations when "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim." Restatement (Second) *Judgments* § 26(1)(d). The respondent cites *Folan v. State*, 723 A.2d 287 (R.I.1999), arguing that his two claims advance separate public policies. In *Folan*, we held that entry of a final judgment in a workers' compensation case did not bar the plaintiff's FEPA claim, *under the exclusivity clause of the Rhode Island Workers' Compensation Act* (WCA). *Id.* at 291. We did not decide whether the plaintiff's FEPA claim would be barred under res judicata. Nevertheless, *Folan* is instructive in so far as it entertains the same type of analysis called for under § 26(1)(d) of the Restatement.

In *Folan*, the plaintiff's first complaint asserted a claim in the Workers' Compensation Court for relief under the WCA, and therefore, the available remedies were limited to that which would compensate the employee for her work-related injury. *Folan*, 723 A.2d at 289–91. The Workers' Compensation Court is a court of limited jurisdiction that is strictly statutory. G.L.

1956 § 28–30–1. We held that the Legislature did not intend the WCA exclusivity provision to bar subsequent FEPA claims because the WCA "does not identify, fully remedy or adequately deter an employer's discriminatory conduct" and "cannot adequately address discrimination in the workplace." *Folan*, 723 A.2d at 291. Unlike the plaintiff in *Folan*, Plunkett filed his first complaint in the Superior Court, which has general equitable powers as well as the authority to award compensatory and punitive damages. In contrast with *Folan*, the Superior Court is vested with jurisdiction over "all other actions arising out of the same transaction or occurrence" as Plunkett's wrongful termination claim, including his FEPA claim. G.L.1956 § 8–2–13.

The Restatement also recognizes an exception to the general preclusion rules for instances when "formal barriers in fact existed and were operative against a plaintiff in the first action," preventing full presentation of his or her claim. Restatement (Second) *Judgments* § 26 at cmt. *c.* The respondent asserts that he could not have included a claim for damages under FEPA in his original lawsuit because the RICHR had not granted him a right-to-sue letter. This Court has held that a plaintiff does not have to exhaust his or her administrative remedies before seeking injunctive relief against claimed discrimination or compensatory damages. In *Ward v. City of Pawtucket Police Department*, 639 A.2d 1379, 1382 (R.I.1994), we declared that "[t]he purpose of an injunction is to prevent imminent, irreparable injury. * * * To require exhaustion of administrative remedies before seeking injunctive relief would destroy the effectiveness of such relief * * *."

If respondent were serious in his contention that he was fired because of his age, he could have asserted age and/or disabili-

ty discrimination as an additional ground for injunctive relief, notwithstanding his lack of a right-to-sue letter. We are satisfied that it was respondent's own choices, not the operation of a formal barrier, that prevented Plunkett from litigating all his issues in one lawsuit.

In *Narragansett Electric Co. v. Rhode Island Commission for Human Rights,* 118 R.I. 457, 459, 374 A.2d 1022, 1023 (1977), we concluded that it was appropriate to look to employment discrimination decisions of the federal courts when state and federal law run parallel. The Equal Employment Opportunity Commission (EEOC), like the RICHR, is empowered to investigate and resolve charges of employment discrimination, including those charges involving age and disability discrimination. *Compare* 42 U.S.C. § 2000e–5(a)–(b), *and* 29 C.F.R. § 1614.105(a) (1999) (granting EEOC investigatory powers over age and disability discrimination claims), *with* §§ 28–5–7, 28–5–8, 28–5–13(6) (creating RICHR and granting authority to investigate age and disability discrimination claims). Both the federal and state statutory schemes require that a complainant obtain a right-to-sue letter from the applicable commission prior to filing a complaint for damages. *Compare* 29 C.F.R. § 1614.105(d) (setting forth pre-complaint procedures and conditions for receipt of a right-to-sue letter from the EEOC), *with* § 28–5–24.1(c)(2) (giving complainants ninety days from receipt of a right-to-sue letter from the RICHR to file suit). It is appropriate to consider federal cases that have addressed the issue of whether a plaintiff can rely on the absence of a right-to-sue letter to avoid the bar of res judicata.

Federal courts have held that employment discrimination claimants cannot escape the preclusive effect of a final judgment on state law grounds by arguing the lack of a right-to-sue letter from the EEOC. *See, e.g., Jang v. United Technologies Corp.,* 206 F.3d 1147, 1149 (11th Cir. 2000) (holding disability discrimination claim barred); *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 339–40 (7th Cir.1995) (holding age discrimination claim barred); *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 38–41 (2d Cir.1992) (holding race and gender discrimination claim barred). These decisions have rested upon a plaintiff's ability to control his or her lawsuit. *See Jang,* 206 F.3d at 1149 (relying on plaintiff's duty to request a right-to-sue letter as well as a plaintiff's ability to stay proceedings and amend his or her complaint); *Brzostowski,* 49 F.3d at 339 ("[The plaintiff] could have delayed the filing of his first suit or requested that the court postpone or stay the first case. What he cannot do, as he did here, is split causes of action and use different theories of recovery as separate bases for multiple suits."); *Woods,* 972 F.2d at 41 (holding plaintiff's claim barred because she failed to take the "minimal steps necessary to preserve each claim" by either requesting a stay pending administrative proceedings or amending her original claim). We deem these principles wholly applicable to the case at bar.

The respondent has steered his own course. He embarked on the pursuit of damages for alleged discrimination as early as April 23, 2001, at least a week before submitting his original claim to a justice of the Superior Court. Instead of alerting the Superior Court justice to the pending charge with the commission, Plunkett remained silent and fast-tracked the litigation. The respondent had several options available to him to avoid today's result. He could have requested a stay of proceedings pending administrative review of his discrimination charge. Alternatively, he

■

could have moved forward with his pursuit of a preliminary injunction and later added the discrimination claim.[2] After losing the initial case in Superior Court, the respondent turned to this Court for appellate review. He could have moved to remand the case to Superior Court to add a discrimination claim based on the right-to-sue letter. The respondent did none of these things. The respondent has had his day in court and our decision today " 'ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit.' " *ElGabri,* 681 A.2d at 275.

## Conclusion

For the reasons stated herein, we grant the petition for certiorari and quash the order of the Superior Court. The record in this case is remanded to the Superior Court with directions to enter judgment in favor of the petitioner.

Chief Justice WILLIAMS did not participate.

---

2. Had respondent chosen this route, after the Superior Court denied his request for a preliminary injunction, he could have obtained a judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action * * * the court may direct the entry of a final judgment as to one or more but fewer than all of the claims * * * upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The respondent then would have been able to appeal the denial of injunctive relief to this Court while simultaneously moving forward with the discrimination claim in the Superior Court.