DECISION
This matter is before the Court on cross motions for summary judgment arising out of the same set of facts. The Plaintiff, Verizon New England, Inc. (Verizon or Plaintiff), seeks summary judgment on its claims against Co-Defendant John Rocchio Corp. (Rocchio). Co-Defendant The Union Water-Power Co., d/b/a On Target (On Target), seeks summary judgment on Verizon's complaint.
Verizon alleges Rocchio damaged its utility lines while excavating, and that as a result of a decision by the Public Utilities Commission (PUC), subsequently affirmed by the Superior Court,[1] through an administrative appeal, Verizon is entitled to judgment as a matter of law pursuant to the doctrine of collateral estoppel. Rocchio has filed a timely objection thereto. Similarly, On Target alleges that Verizon is estopped from judgment against On Target, pursuant to the doctrine of res judicata. On Target contends that it was adjudged to have no liability by the PUC, in the aforementioned administrative hearing, and that this determination was subsequently affirmed by the Superior Court, Vogel, J.[2], thereby removing On Target from the possible parties who could be held *Page 2 
responsible for the damage done to Verizon's utility lines. Verizon has filed a timely objection thereto. Jurisdiction is pursuant to Rule 56 of the Superior Court Rules of Civil Procedure.
 Facts and Travel
On December 19, 2003, Rocchio contacted Dig Safe to notify it of Rocchio's intent to excavate 100 feet down on either side of Washington Street in Coventry, Rhode Island. After examining the area, Dig Safe determined that there were Verizon underground facilities[3] within it. Dig Safe notified On Target, with whom Verizon contracted, to locate and mark Verizon's underground facilities. Per Dig Safe's request, On Target arrived at the site and marked all of Verizon's underground facilities.
Subsequently, on January 7, 2004, while digging with an excavator in the Washington Street area, Rocchio struck several underground telecommunications cables owned by Verizon. Following the accident, Rocchio submitted two reports of Dig Safe Probable Violation and/or Damage to Underground Facilities to the PUC. Therein, Rocchio claimed that Verizon violated §§ 39-1.2-7 and 39-1.2-12 of the Dig Safe laws by failing to mark or inadequately marking the underground facility, and by failing to remark the underground facility within 24-hours of a request for a re-marking. In response, Verizon submitted its own Report of Dig Safe Probable Violation to the PUC, claiming that Rocchio violated § 39-1.2-10 of the Dig Safe laws by performing the excavation without precaution to prevent weakening of support to pipes, mains, wires, or conduits or damage to the protective coating thereof. After receipt of these probable violations, an *Page 3 
informal hearing was held by the PUC on March 3, 2004. PUC Engineering Specialist Kenneth McCarthy ("Informal Hearing Officer") was the informal hearing officer.
The Informal Hearing Officer determined that the markings made by On Target accurately showed the approximate location of Verizon's underground facility as required by § 39-1.2-1; therefore, no Dig Safe violation or fine was imposed on Verizon. Regarding Rocchio's second claim that Verizon failed to re-mark the area within 24-hours of receiving a request to re-mark, the Informal Hearing Officer found that Verizon's underground facility was, in fact, re-marked in accordance with Dig Safe law, and therefore, no fine would be imposed on Verizon.
Furthermore, in evaluating Verizon's claim that Rocchio did not perform the excavation with precaution, the Informal Hearing Officer concluded that, given the extent of the damage, Rocchio must have been using a mechanized excavator in violation of § 39-1.2-10. Therefore, the Informal Hearing Officer found sufficient proof that Rocchio did not exercise the statutorily required precaution, and he ordered Rocchio to pay a civil penalty in the amount of $1000 as a result of the findings.
Following receipt of the PUC's decision, Rocchio requested a formal evidentiary hearing on the matter. That hearing was held on June 28, 2004, before PUC Hearing Officer David Gentile ("Formal Hearing Officer"). The Formal Hearing Officer made a number of determinations, ultimately finding that Rocchio had violated § 39-1.2-12 because it did not maintain On Target's original markings or make a request for remarking at any time. Furthermore, the Formal Hearing Officer denied and dismissed Rocchio's claims that Verizon violated § 39-1.2-7, and sustained Verizon's allegations that Rocchio violated §§ 39-1.2-10 and39-1.2-12. Thereafter, Rocchio timely filed an *Page 4 
appeal of the PUC's findings to the Superior Court, pursuant to the Administrative Procedures Act, § 42-35-1 et seq., contending that the PUC misconstrued the pertinent provisions of the Dig Safe laws.
After reviewing the entire record, the Superior Court determined that the PUC did not erroneously construe the Dig Safe law "and did not err in finding that Rocchio violated the Dig Safe law," because the underground facility had been properly marked by On Target. The Court held that the PUC's decision was supported by the reliable and substantial record of evidence and was in no way arbitrary or capricious. Accordingly, the Court denied Rocchio's appeal and affirmed the decision of the PUC.
While Rocchio's appeal was pending in the Superior Court, Verizon brought the within action against On Target and Rocchio for damages arising from the destruction of its underground facility at issue in this matter. Verizon claims that On Target negligently marked the underground facility, and that Rocchio negligently excavated in the vicinity of the underground facility. In reponse, On Target now moves for summary judgment claiming that the doctrine of res judicata bars Verizon's negligence claim. Verizon also moves for summary judgment, arguing that the PUC findings are conclusive of Rocchio's negligence.
 Standard of Review
Summary judgment is a "drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute." Superior BoilerWorks, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998). If no genuine issue of material fact exists, the court must then determine *Page 5 
whether the moving party is entitled to judgment as a matter of law.Alfano v. Landers, 585 A.2d 651, 652 (R.I. 1991).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers of Cranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning AutoParts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc.,623 A.2d 971, 972 (R.I. 1993).
 Verizon's Motion for Summary Judgment
In moving for summary judgment, Verizon contends that because of a previous PUC ruling that Rocchio violated both §§ 39-1.2-10 and39-1.2-12, Rocchio is collaterally estopped in the present suit from denying that his negligence was the cause of the damage to Verizon's underground facility. Rocchio responds that collateral estoppel is inapplicable because the elements for applying collateral estoppel are not satisfied in this case. This Court finds that, while Verizon is able to meet a number of the requirements necessary to assert a collateral estoppel argument, Verizon's argument fails.
Collateral estoppel prevents parties from relitigating facts that have already been determined at a prior proceeding. See, e.g.,Foster-Glocester Regional School Committee *Page 6 v. Board of Review, 854 A.2d 1008, 1014 (R.I. 2004). Application of the doctrine of collateral estoppel is not limited to final determinations by the Court, but is applied to final determinations of administrative bodies as well. Id. at 1016 (applying the doctrine of collateral estoppel to an arbitrator's determination of the facts).
Collateral estoppel is appropriate if four elements are met: (1) the issue decided in the prior adjudication is identical with the issue presented in the current action; (2) there was a final judgment on the merits in the previous action; (3) the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. E.A. Audet Sons, Inc. v. Fireman's FundIns. Co. of Newark, New Jersey, 635 A.2d 1181 (R.I. 1994). In this case, Verizon is seeking to employ the doctrine of offensive mutual collateral estoppel, wherein an issue decided against a defendant in one suit is later used by a second plaintiff in a second suit dispositively against the defendant from the first suit, thereby preventing re-litigation of an issue already decided. Parklane Hosiery Co. v. Shore, 439 U.S. 322,326 (1979). The United States Supreme Court has explicitly stated that caution must be exercised before permitting the use of offensive collateral estoppel, and that each such case must be scrutinized utilizing the following additional "fairness factors": (1) whether the party trying to assert collateral estoppel had the opportunity to join the previous suit; (2) whether the defendant had an incentive to litigate the first action; (3) whether there are multiple, prior, inconsistent judgments; and (4) whether there are procedural opportunities available to the defendant in the second suit that were not available in the first suit. Parklane, 439 U.S. at 329-31. *Page 7 
Verizon's reliance on offensive collateral estoppel is not well-founded. While a number of the basic elements of collateral estoppel are met here, such as identity of parties in the previous suit and the present suit and the existence of a final judgment on the merits in the previous adjudication, other elements are not satisfied. In particular, the issue presented in the previous claim is not identical to the one presented in this case. In the previous PUC adjudication, the narrow issue raised and decided was whether or not Rocchio violated § 39-1.2-10 and § 39-1.2-12. Verizon contends that § 39-1.2-10 provides a statutory duty of care, and that the PUC's decision should be used to collaterally estop Rocchio from litigating in defense of a negligence claim. Contrarily, Rocchio contends that there are other issues, such as direct and proximate cause — central elements to any negligence action — that were never litigated in the PUC action, nor did Rocchio have any reason to litigate such issues in the previous action.
This Court recognizes that the current cause of action for negligence requires the fact-finder to determine not only what the standard of care in the industry is and if there was a breach of that standard of care, but also whether or not Rocchio's actions were the direct and proximate cause of the damage to Verizon's underground facility. See,e.g., Foley v. St. Joseph Health Services of R.I., 899 A.2d 1271, 1277
(R.I. 2006). These are issues that were not part of the previous adjudication, and thus there are legal issues before this Court that are not identical to those decided by the PUC in the previous action.
Rocchio further contends that one of the fairness factors articulated by the United States Supreme Court in Parklane is determining whether the defendant in the present case, Rocchio, had a similar incentive to zealously litigate the issue in the first action. *Page 8 
 Parklane, 439 U.S. at 329-31. This Court is not convinced Rocchio had a similar incentive to vigorously litigate in the first action as opposed to in the present negligence suit. Here, Rocchio is facing a possible adverse judgment in excess of $200,000, and therefore has a tremendous incentive to fully and faithfully litigate the case. Conversely, in the previous PUC adjudication, Rocchio's potential liability was far less, as he was ultimately fined $1000 by the PUC. The Supreme Court warns in Parklane that a defendant facing nominal damages in a prior cause of action might have little incentive to zealously defend that case, which demands caution in applying the doctrine of offensive collateral estoppel in the second suit. Parklane,439 U.S. at 330 (where the difference between $35,000 in the first action and $7,000,000 in the second action justified denying the use of offensive collateral estoppel); see also Tuper v. North Adams Ambulance Service,Inc., 697 N.E.2d 983, 986 (1998) (determinations from employees unemployment compensation proceedings should not be given preclusive effect in a breach of contract action where the difference in potential liability is great).
Additionally, while it is undisputed that Rocchio violated the Dig Safe laws, violation of a statute is merely evidence of negligence and not dispositive in a negligence action. See Clements v. Tashjoin,92 R.I. 308, 313-14, 168 A.2d 472, 474 (R.I. 1961) (holding that a violation of a statute, which itself creates a duty to the public, may be used as evidence of the existence and breach of a duty, requiring separate proof of causation and damages). The previous decisions by the PUC and the Superior Court, therefore, stand only for the proposition, at most, that Rocchio had a duty which he breached. Therefore, this Court cannot say as a matter of law that Rocchio is liable due to his apparent negligence in excavating the area surrounding Washington Street, or that *Page 9 
Rocchio is estopped from asserting his alleged defenses, pertaining to, for example, causation or damages. Stated another way, there remains a possibility that Rocchio may have violated the Dig Safe laws without being liable to Verizon for said violations. Such a possibility was neither examined nor warranted in the previous hearing, as Rocchio's negligence was inconsequential to the outcome.
For the above stated reasons, collateral estoppel here will not prevent Rocchio from defending Verizon's claims of negligence. A number of different issues that were not factors in the previous suit are now present in the current negligence action. Additionally, this Court is not persuaded that Rocchio had a similar incentive to vigorously litigate all of the issues in the previous suit. Therefore, Verizon's motion for summary judgment is denied.
 B. On Target's Motion for Summary Judgment
Res judicata "bar[s] relitigation of all issues that were tried or might have been tried in the original suit by any court of competent jurisdiction." Air-Lite Products, Inc. v. Gilbane Bldg. Co. et.al., 115 R.I. 410, 422, 347 A.2d 623, 630 (1975). This principle extends to the decisions of quasi-judicial administrative agencies, such as the PUC. See Dept. of Corrections v. Tucker, 657 A.2d 546, 549 (R.I. 1995). The Rhode Island Supreme Court has recently discussed the well recognized doctrine of res judicata in Plunkett v. State, 869 A.2d 1185
(R.I. 2005), explaining,
 "[t]he doctrine of res judicata applies when there exists identity of parties, identity of issues, and finality of judgment in an earlier action. The term `res judicata' is commonly used to refer to two preclusion doctrines: (1) collateral estoppel or issue preclusion; and (2) res judicata or claim preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided while claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a *Page 10 
determination that it should have been advanced in an earlier suit. Although issue preclusion generally operates to bar relitigation of only those issues that actually were decided in the prior lawsuit, it may even apply when the second lawsuit asserts a different claim. Claim preclusion, on the other hand, precludes the relitigation of all the issues that were tried or might have been tried in the original suit." Plunkett, 869 A.2d at 1188.
In determining the scope of the issues to be precluded in the second action, our Court has adopted the broad "transactional" rule which precludes the relitigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." Id. (quoting Manego v. Orleans Board of Trade, 773 F.2d 1, 5
(1st Cir. 1985)). "What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. . . ." Id. (quoting Manego, 773 F.2d at 5). The doctrine of res judicata reflects "the expectation that parties who are given the capacity to present their `entire controversies' shall in fact do so." ElGabri v. Lekas, 681 A.2d 271, 276 (R.I., 1996) (quoting 1 Restatement (Second) Judgments § 24, comment a).
In the instant case, Rocchio struck several underground telecommunications cables owned by Verizon. Following the accident, Rocchio submitted two reports of Dig Safe Probable Violation and/or Damage to Underground Facilities to the PUC. Therein, Rocchio claimed that Verizon violated §§ 39-1.2-7 and 39-1.2-12 of the Dig Safe laws by failing to mark or inadequately marking the underground facility, and by failing to remark the underground facility within 24-hours of a request for remarking. In response, Verizon submitted its own Report of Dig Safe Probable Violation to the PUC, claiming *Page 11 
that Rocchio violated § 39-1.2-10 of the Dig Safe laws by performing the excavation without precaution.
After reviewing the claims of both parties, the PUC Informal Hearing Officer determined that the markings made by On Target accurately showed the approximate location of Verizon's underground facility as required by § 39-1.2-1 and, therefore, no Dig Safe violation or fine was imposed on Verizon. Regarding Rocchio's second claim that Verizon failed to re-mark the area within 24-hours of receiving a request to re-mark, the Informal Hearing Officer found that Verizon's underground facility was, in fact, remarked in accordance with Dig Safe law and, therefore, no fine would be imposed on Verizon.
Ultimately, the PUC sustained these findings at a formal evidentiary hearing, and the Superior Court denied Rocchio's appeal. The Court determined that the PUC did not erroneously construe the Dig Safe law "and did not err in finding that Rocchio violated the Dig Safe law," because the underground facility had been properly marked by On Target. The Court held that the PUC's decision was supported by a reliable and substantial record of evidence and was not arbitrary or capricious.
Given that Rhode Island subscribes to the broad "transactional" rule which precludes the relitigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] action arose," it initially appears that Verizon's claims are barred by the doctrine of res judicata. Plunkett, 869 A.2d at 1188. (Citations omitted.) Here, Verizon has brought a claim alleging that On Target was negligent in marking its underground utilities. As described above though, neither the PUC nor the Court found that On Target violated the Dig Safe laws after reviewing the entire *Page 12 
evidentiary record. To the contrary, both the PUC and the Court determined that the Verizon underground utilities were properly marked by On Target and that it was Rocchio's negligence which caused the damage.
However, when the determinations made by the PUC and the Court are reviewed further, it is clear that both the PUC and the Court merely answered the question of whether or not the Dig Safe laws had been violated. While the findings of fact may be conclusive and binding as to establishing violations of the Dig Safe laws, the same findings are not dispositive of establishing negligence, or a lack thereof, on the part of On Target. Instead, a weighing of all of the surrounding facts and circumstances is necessary because our Supreme Court recognizes the violation of a statute as merely evidence of negligence. Sitko v.Jastrzebski, 68 R.I. 207, 210, 272 A.2d 178, 179 (1942). That Court has explained that if a duty imposed by a statute was breached, it would be prima facie evidence of negligence, but not negligence per se. SeeClements v. Tashjoin, 168 A.2d 472, 474 (R.I. 1961). Therefore, any violations of the Dig Safe laws by Rocchio here can be used as evidence of Rocchio's negligence and On Target's want of negligence. Nevertheless, these determinations are certainly not conclusive that On Target did or did not fall below a standard of care established by the industry. That issue will need to be resolved by expert testimony. Furthermore, given the nature of the PUC hearings and Rocchio's appeal, it is uncertain where or how Verizon would or could have asserted a negligence claim against On Target in either of those forums. The PUC is an administrative board in charge of enforcing the Dig Safe laws, not a forum for asserting common law negligence. See G.L. 1956 § 39-1.2-13(a) (explaining that penalties *Page 13 
assessed for violation of the Dig Safe laws do not replace available civil remedies). Accordingly, On Target's motion for summary judgment must be denied.
 Conclusion
After reviewing the evidence and the memoranda submitted by the parties, this Court denies both Verizon's and On Target's motions for summary judgment. Counsel shall submit an appropriate order consistent with this decision.
[1] Rocchio Corp. v. R.I. Div. of Pub. Util. and Carriers, No. 04-6833, Aug. 1, 2006.
[2] Id.
[3] The term "facilities" refers to both the underground utility line and any conduit or duct bank that may encase such a utility line. (On Target's Mem. 3 n. 3.) *Page 1