DECISION
This motion is before the Court for decision on Defendant Union's and Defendant Union Officials' Motions to Dismiss for lack of prosecution and for Summary Judgment. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Background
This case arises out of an employment dispute between Plaintiff Frank Monteiro ("Monteiro" or "Plaintiff") and his former employers: Defendants Town of Middletown ("Middletown"), and its School Department; and his former union, Rhode Island Council 94, *Page 2 
AFSCME, AFL-CIO, Local 1823 ("Union" or "Council 94"). Also included as Defendants are individual union officials: David Rodrigues ("Rodrigues"), David Aull ("Aull"), Timothy Carr ("Carr"), and David Kilmer ("Kilmer") (collectively, "the Union Defendants"). Monteiro filed a complaint against all Defendants with the Rhode Island Commission for Human Rights ("RICHR") in 2005, alleging that he had been discriminated against on religious and racial[1] grounds during his employment as a maintenance technician and carpenter. He also alleged that he was discharged in retaliation for making complaints. Monteiro's claims as against the Union and Union Defendants were limited to those of racial and religious discrimination.
A Consent Order was entered into in 2005, whereby the Plaintiff would be suspended without pay pending arbitration. In May 2006, the arbitrator upheld the termination, addressing Monteiro's claims that his termination lacked just cause and his claims of discrimination. This Court confirmed the arbitration in November of that year.
After the Court affirmed the arbitrator's decision in November 2006, the parties continued the suit by pursuing litigation of the discrimination and unfair representation claims. Discovery ensued between Monteiro and the School Department, but it did not include the Union and Union Defendants. This Court granted the School Department's October 2008 Motion for Summary Judgment, in which the Department asserted that: (1) Monteiro's claims were already decided against him and should be afforded collateral estoppel; and, (2) there was no evidence of the discrimination that Monteiro alleged. The motion was granted without any response and/or objection by Monteiro. The only remaining Defendants, the Union and the Union Defendants, request that the Court grant the within Motion for Summary Judgment. *Page 3 
The Union and Union Defendants proffer several reasons why summary judgment is appropriate here. First, they argue that since Monteiro has failed to prosecute his case against them since 2005, Super. Ct. R. Civ. P. Rule 41(b)(2) allows this Court to dismiss the claims for such failure to prosecute. In support of this argument, they point to the lack of discovery and communications among the litigants since 2005, despite the Union and Union Defendants' alleged efforts to prod the Plaintiff into action.
Second, the Union and Union Defendants argue that there is no genuine issue of material fact outstanding that would prevent this Court from finding that the claims for Duty of Fair Representation (DFR) must be denied. They argue that DFR claims may only be brought against a union, and not individual persons. Additionally, they argue that Monteiro cannot prove theprima facie case for a DFR claim. Monteiro allegedly cannot establish the first element, that the employer violated the Collective Bargaining Agreement (CBA), because of the preclusive effect of the 2008 grant of summary judgment: without proof that the employer breached, Monteiro cannot, as a matter of law, establish the same fact as to the Union. The second element, that the Union breached a duty owed to Monteiro, cannot be proven because he has not come forth with any evidence that the Union breached its duty. Although he has come forward with evidence that his supervisors (who happen to also be the Union Defendants here) acted a certain way, he has failed to show how they, as Union officials, breached a duty. Regardless of this, the Defendants argue, collateral estoppel bars litigating the issue. Finally, the moving Defendants note that in order to succeed on a DFR claim, Monteiro must show that had the Union not breached its duty, their actions would have favorably affected the outcome of the CBA dispute with the employer. The Union and Union Defendants argue that Monteiro has not come forward *Page 4 
with sufficient evidence to illustrate that he would have been successful against his employer had the Union acted as required.
Furthermore, the moving Defendants argue that there is no genuine issue of material fact outstanding that would prevent this Court from finding that the DFR claim is Monteiro's only remedy available against the Union, and without a successful DFR claim, the Union must be excused. The due process issue, which the Union argues could only be maintained against the School Department and municipal Defendants, was determined by the arbitrator; the injunctive relief claim was determined by a Consent Order and solidified by the arbitration. The only claim that could be maintained against the Union is the DFR claim, and the Union and Union Defendants argue that this cannot be shown.
Finally, the Union and Union Defendants argue that summary judgment is allegedly appropriate on the Rhode Island Civil Rights Act (RICRA) claim. The arbitrator found no evidence to support the discrimination claim, and this Court upheld that finding. The remaining Defendants also argue that the "no probable cause" determination made by the RICHR on the race and religion claims precludes this Court from further determination. The two-year period within which RICRA allows right-to-sue determinations has long since passed, and the RICHR's determinations should be afforded full issue and claim preclusive effect, the remaining Defendants contend. Essentially, the Union and Union Defendants seek to invokeres judicata as to the RICHR decision.
Monteiro timely filed an objection to Defendants' motion, arguing that summary judgment should be denied on all arguments. First, Monteiro argues that Defendants' Motion to Dismiss for lack of prosecution under Rule 41(b)(2) should be denied because he has complied fully with the rules, and it is not uncommon for civil actions such as these to move slowly *Page 5 
without justifying dismissal. The delay, Monteiro maintains, has neither come through his contrivance, nor by dishonesty or bad motives.
Plaintiff opposed the summary judgment motion, in part, on the basis that the arbitration decision does not collaterally estop Monteiro from bringing the current suit. He argues that the issues are not the same, nor was the decision final on the instant claim. Monteiro argues that the arbitrator only considered whether Monteiro was discharged without cause, and if so, what the remedy was. Here, the issue is whether the Union and officials breached their DFR, and whether they violated RICRA. Because the issue decided upon by the arbitrator is not the same as the one herein, it cannot be said that the final decision rendered was on the current issue, Monteiro maintains.
Furthermore, Monteiro avers that the summary judgment was opposed on the basis that there are outstanding genuine issues of material fact as to whether the DFR claims should proceed. Assuming that collateral estoppel does not bar the claim, there remains much unknown about the discrimination claims against the Union and officials, precluding a summary disposition of the issue. Monteiro describes how, in his estimation, the School Department violated the CBA by treating him differently than all the other white and/or non-Jehovah's Witness employees, allowing a hostile workplace to flourish, and failing to promote him because of his race and/or religion. In support of these arguments, Monteiro presents the Collective Bargaining Agreement, the Arbitration Decision, an Affidavit of Monteiro, photos of the alleged race and religious discrimination, the Charge of Discrimination to the RICHR and Monteiro's deposition. Additionally, he references the Second Amended Complaint. Furthermore, Monteiro refers to the same documents in order to claim that the Union and its officials did breach its DFR. In setting forth such a position, Monteiro specifically argues that the Union *Page 6 
consistently and arbitrarily favored the Union and its officials over Monteiro in disputes and failed to provide a neutral Union representative.
Monteiro also argues that there are genuine issues of material fact concerning the discrimination claims. His position is that collateral estoppel arguably does not prevent the claims from being heard now, both with regard to the arbitration decision and the RICHR decision. The RICHR decision was rendered upon the basis of the Fair Employment Practices Act (FEPA), not a RICRA claim. The RICHR decision was not appealed because it had to go to federal court, and Monteiro decided to pursue a RICRA claim in state court instead. Administrative remedies are, arguably, not required to be exhausted.
Furthermore, Monteiro argues that he has made out primafacie cases for both race and religious discrimination claims under RICRA, and again referencing the CBA, the Arbitration Decision, his own affidavit, the photos, the RICHR charge, and his own deposition. While the employer is typically charged with discrimination, Monteiro argues that the Union and officials should also be liable because they fostered the discrimination and allowed it to continue without intervention.
 Standard of Review
On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 669 (R.I. 2004). On such a motion, the Court is to determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The emphasis is on issue finding, not issue determination. O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian, 103 R.I. 495, 496, 238 A.2d 742 (1968). "Summary *Page 7 
judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law." Chavers, 844 A.2d at 669. A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. at 669-70 (quotingUnited Lending Corp. v. City of Providence,827 A.2d 626, 631 (R.I. 2003)). "[A]s a prerequisite to an order for summary judgment, the trial justice must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion." Steinberg v. State,427 A.2d 338, 340 (R.I. 1981).
 Applicable Law
The Rhode Island Superior Court Rules of Civil Procedure, Rule 41(b)(2) reads: "[o]n Motion of the Defendant. On motion of the defendants the court may, in its discretion, dismiss any action for failure of the plaintiff to comply with these rules or any order of court or for lack of prosecution as provided in paragraph (1) of this subdivision." Paragraph one reads, in relevant part, as follows: "[t]he court may, in its discretion, dismiss any action for lack of prosecution where the action has been pending for more than 5 years, or, at any time, for failure of the plaintiff to comply with these rules or to proceed when the action is reached for trial."
In a case involving failure to prosecute justifying dismissal, the Rhode Island Supreme Court recently explored 41(b)(2) inBergeron v. Roszkowski, 866 A.2d 1230, 1237 (R.I. 2005):
 "`The primary responsibility for moving a case on for trial rests with the plaintiff and his or her attorneys, not the defendant or the trial court.' Hyszko [v. Barbour, 488 A.2d 723, 726 (R.I. 1982).] `Mere delay[however,] is not enough to warrant dismissal for lack of prosecution.' Harvey [v. Town of Tiverton, 764 A.2d 141, 143 (R.I. 2001).] `Although the trial court must weigh the equities between the parties, *** it need not view the evidence in a light most favorable to the plaintiffs.' Id[.] `In considering a motion to dismiss for failure to prosecute, the *Page 8 
court is `required to weigh conflicting interests. On the one hand is the court's need to manage the docket, the public interest in the expeditious resolution of litigation, and the risk of prejudice to the defendants from delay. On the other hand, there is the desire to dispose of cases on their merits." Id[.]"
Bergeron's facts warranted dismissal, as the plaintiff kept delaying litigation by substituting experts at the eleventh hour, violating court orders, and failing to line up required witnesses.See Bergeron, 866 A.2d at 1237. The trial justice dismissed for failure to prosecute, and the High Court upheld the dismissal. See id.
Turning to the Union and Union Defendants' arguments on summary judgment, this Court must first examine the law on the issue of collateral estoppel. "[T]he doctrine of collateral estoppel prevents the re-litigation of an issue actually litigated and determined between the same parties or their privies." Wilkinson v. StateCrime Lab. Comm'n, 788 A.2d 1129, 1141 (R.I. 2002). "[C]ourts should apply collateral estoppel when the case before them meets three requirements: (1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; [and] (3) the issue or issues in question are identical in both proceedings."Foster-Glocester Regional Sch. Comm. v. Bd. of Review,854 A.2d 1008, 1014 (R.I. 2004) (citations omitted). "[A]n arbitration award that is confirmed by the Superior Court is equivalent to a final judgment in an action at law." MulhollandConstr. Co. v. Lee Pare Assocs.,576 A.2d 1236, 1237 (R.I. 1990).
In support of their Motion for Summary Judgment, the Union and Union Defendants argue that Monteiro's claim for breach of the DFR must fail as a matter of law. A prima facie case for a breach of duty of fair representation may be shown by illustrating two elements: (1) the employer violated the Collective Bargaining Agreement with the union; and (2) the union breached a duty owed to its member. See DiPinto v. Sperling,9 F.3d 2, 3 (1st Cir. 1993). "The duty of fair representation is a union member's protection against the tyranny of the union *Page 9 
majority." Voccio v. Gen. Signal Corp.,732 F. Supp. 292, 295 (D.R.I. 1990). "[T]he duty of fair representation is breached upon a showing of arbitrary, discriminatory, or bad faith conduct, or by the handling of a grievance in a `perfunctory' manner and not by union error in failing to process a meritorious grievance." Lee v. R.I.Council 94, A.F.S.C.M.E., AFL-CIO, Local 186,796 A.2d 1080, 1083 (R.I. 2002). Bad faith on the union's part is not required; however, Plaintiff must allege "considerably more than conclusions or a `skeletal set of bland allegations.'"Berrigan v. Greyhound Lines, Inc.,782 F.2d 295, 299 (1st Cir. 1986); see also Belanger v.Matteson, 115 R.I. 332, 344-45 n. 4, 346 A.2d 124, 132 n. 4 (1975). Unions must and may choose sides in disputes, but they must do so in a nonarbitrary manner, using good faith in making their decision.See Belanger, 115 R.I. at 342, 346 A.2d at 130. Without hostility to anyone, the union must make an honest effort to serve the interest of all of its members. See Belanger,115 R.I. at 341, 346 A.2d at 130-31.
In opposing the Motion for Summary Judgment, Monteiro relies upon the RICHR and the unsettled nature of the facts surrounding the race and religious discrimination claims. The RICHR hears complaints under FEPA, pursuant to G.L. 1956 § 28-5-1, et seq. The Rhode Island Civil Rights Act, however, "sweeps more broadly than the FEPA, covering a host of situations, many of which do not involve the employer-employee relationship at all."Rathbun v. Autozone, Inc., 361 F.3d 62, 69 (1st Cir. 2004). As such, FEPA and RICRA are not intended to be analogous or "construed in lockstep." Rathbun, 361 F.3d at 69.
Furthermore, RICRA, at § 42-112-1, et seq., provides for civil liability in the case of any discrimination on the basis of "race, color, religion, sex, disability, age, or country of ancestral origin," regardless of context (i.e., employer-employee, landlord-tenant, etc.). "[T]he RICRA protects plaintiffs against any discrimination which interferes with the `benefits, terms, and *Page 10 
conditions' of the employment relationship — whether it takes the form of disparate impact, disparate treatment, retaliation, or harassment." Iacampo v. Hasbro, Inc.,929 F. Supp. 562, 573 (D.R.I. 1996). "[T]here is no language requiring, or even suggesting, that a plaintiff must first exhaust any or all administrative remedies before filing a civil action [under RICRA]," including appealing a RICHR decision. Ward v.Pawtucket Police Department, 639 A.2d 1379, 1382 (R.I. 1994). To interpret RICRA, Rhode Island courts look to decisions on Title VII of the federal Civil Rights Act of 1964, upon which this state's statute is based. See Casey v. Town of Portsmouth,861 A.2d 1032, 1036 (R.I. 2004).
A plaintiff has a prima facie case of disparate treatment if he demonstrates: "(1) membership in the protected class; (2) that he or she suffered from an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was treated differently from similarly situated members of the unprotected class." Alexander v. Local 496, Laborers' Int'l Unionof N. Am., 177 F.3d 394, 402-03 (6th Cir. 1999). "[I]f the plaintiff can establish a prima facie case of discrimination, a summary judgment motion cannot be entered in favor of the defendants." Gera v. Hasbro, Inc., No. 98-537, 1999 WL 1012300, *4 (D.R.I. Oct. 29, 1999).
Monteiro also suggests that the Union and Union Defendants may be liable for fostering a hostile work environment. A hostile work environment exists "if the workplace is permeated with discriminatory intimidation, ridicule, and insult that is [] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "The claimant must show both that the offending conduct created an objectively hostile work environment and that he [or she] subjectively perceived the work environment to be hostile."Eliserio v. United Steelworkers of Am. Local 310,398 F.3d 1071, 1076 (8th Cir. 2005). Whether a hostile work environment *Page 11 
existed "must be judged by looking at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was . . . humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance."Id. "A union has no affirmative duty . . . to investigate and take steps to remedy employer discrimination." Id. However, a union is liable for fostering a hostile work environment if "the [u]nion itself instigated or actively supported the discriminatory acts." Id.
Finally, Monteiro's claims against the Union and Union Defendants require this Court to examine the law of retaliation. To make aprima facie case of retaliation, a plaintiff must show that: (1) he opposed an act of unlawful discrimination or participated in an investigation of unlawful discrimination; (2) "he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct." Eliserio,398 F.3d at 1078-79. "[A]ny meaningful adverse action is sufficient when the retaliation defendant is a union." Id. at 1079.
 Analysis
First, with regard to the Motion to Dismiss under Rule 41(b)(2), this Court finds that Plaintiff Monteiro's pursuit of this action does not warrant dismissal for failure to prosecute. His behavior — an alleged failure to actively prosecute this case since 2005 — has not risen to the level of the plaintiff inBergeron, wherein the plaintiff made eve-of-trial motions to continue and swap expert witnesses, and was not candid with the trial justice regarding her health and travel plans. See866 A.2d at 1237 (intentional acts by the plaintiff amounted to delay and failure to prosecute). Here, the case has just moved slowly. While the Court always appreciates expeditious resolution of civil cases, it understands that not every case can be dealt with quickly, or even slowly, with discovery, motions, and the parties' attempt at negotiations consuming the *Page 12 
space between 2005 and the present. Some suits move at a genuinely glacial pace, free from any behavior evidencing intent to maliciously stall the suit, and as such, this Court is unwilling to dismiss a suit merely for slow progress. See Harvey,764 A.2d at 143 (R.I. 2001) (delay alone is an insufficient ground for 41(b)(2) dismissal). Accordingly, the Motion to Dismiss pursuant to 41(b)(2) is denied.
Turning now to the Union and Union Defendants' Motion for Summary Judgment, the Court estimates that the lynchpin of the motion is the issue of preclusion. If the Arbitrator's and RICHR decisions are afforded preclusive effect, the motion will fail. However, if the decisions are not upheld by preclusion, the individual claims remain open to this Court's interpretation. The Court will deal with the decisions in turn.
The Arbitrator's Decision upholding Monteiro's termination cannot be afforded collateral estoppel in this case. In order to invoke collateral estoppel, "the issue or issues in question [must be] identical in both proceedings." Foster-Glocester Reg'lSch. Comm., 854 A.2d at 1014. Here, the issues are not the same. The Arbitration Decision only sought to "litigate" the issue of whether Monteiro had been terminated with cause; the current suit alleges specific claims, including breach of duty of fair representation. These are not the same things. The Union and Union Defendants argue that the Arbitrator's Decision to uphold the termination touched upon the DFR issue, therefore the issue was actually litigated for the purposes of collateral estoppel. This is unpersuasive. Therefore, because the issues are different, this Court cannot collaterally estop Monteiro from litigating the DFR issue today. See Foster-Glocester Reg'l Sch. Comm.,854 A.2d at 1014 (requiring identical issue(s) in each proceeding to invoke collateral estoppel).
Furthermore, with respect to the argument for invoking collateral estoppel, this Court notes that another element is not satisfied: the requirement of a final decision on the issue. See *Page 13 id. Had the issues been the same, this Court would be required to afford the Arbitrator's Decision "final decision" status.See Mulholland Constr. Co., 576 A.2d at 1237 (an arbitrator's decision that has been confirmed by the Superior Court has the same final judgment effect as an action at law).
Therefore, this Court may properly examine the ripeness of the DFR claim for summary judgment. It is evident, from the previous discussion of Monteiro's rebuttal evidence, documentation, affidavits and pleadings, that there are several genuine issues of material fact left to determine, making summary judgment inappropriate at this time. See Chavers,844 A.2d at 669-70 (stating summary judgment standard of review). Monteiro has provided sufficient "competent" evidence that makes out a prima facie case for breach of DFR. See id.
First, he has illustrated that his employer may have breached the CBA with the Union. He points to specific provisions in the CBA, which he attached to the memorandum, and describes certain situations, circumstances and events that would constitute a breach thereof. Specifically, he points to Article 3 of the CBA, which prohibits any discrimination on account of race and religion, among other things. In support of this contention, he points to allegations made in the Second Amended Complaint, a complaint Monteiro drafted in mid to late 2000, the Arbitration Decision, and the photographs on the so-called "wall of shame."
He also points to Article 14.2 of the CBA, which requires immediate investigation of complaints of unsafe or unhealthy work conditions. Monteiro argues that the discriminatory workplace in which he was required to work, without recourse, constitutes an unhealthy workplace. Specifically, maintenance of the "wall of shame," whereupon employees posted racially and religiously demeaning altered photographs, news clippings and notes, constitutes an unhealthy workplace that defies any objective justification. Monteiro's allegation, taken in a *Page 14 
light most favorable to him, that his employers expressly authorized the board, meets the standard for unsafe or unhealthy work conditions under the CBA. SeeSteinberg, 427 A.2d at 340 (review the evidence in a light most favorable to the opponent).
In opposing the motion, Monteiro alleges, referencing the Arbitrator's Decision, that he was passed over for a position within his bargaining unit that he was qualified for because of his race and/or religion. No justification was allegedly provided to Monteiro. Looking to Article 5.1 of the CBA, there is a requirement giving preference for bargaining unit jobs to those already in the bargaining unit. This provision, along with the other alleged CBA violations, raises a genuine issue of material fact in this Court's mind.
To rebut the Union and Union Defendants' motion, Monteiro has also attempted to demonstrate that the Defendants owed him a duty of fair representation, and he has raised the issue of whether or not that duty was honored. Monteiro has pointed to instances where the Union and officials failed to provide neutral representation, and arbitrarily favored Union officials over Monteiro. This Court finds that there are far too many issues outstanding to summarily decide the DFR claim at this stage.
The Union and Union Defendants also seek to invoke resjudicata, or claim preclusion, as to the RICHR decision. That this situation seeks to preclude in-court litigation with a decision from the RICHR does not affect the analysis: decisions issued by quasi-judicial administrative bodies are afforded preclusive effect in court, so long as the quasi-judicial tribunal "grants to the parties substantially the same rights that they would have if the matter were presented to a court." Dept. ofCorrections v. Tucker, 657 A.2d 546, 549 (R.I. 1995).
Claim preclusion "precludes the relitigation of all the issues that were tried or might have been tried in the original suit."Foster-Glocester Reg'l Sch. Comm., 854 A.2d at 1014 n. 2. The *Page 15 
Rhode Island Supreme Court has examined the question of what constitutes a "claim" for purposes of claim preclusion, adopting the so-called "transactional rule" set forth in the Restatement (Second) Judgments, Section 24. SeeElGabri v. Lekas, 681 A.2d 271, 276 (R.I. 1996); seealso Plunkett v. State, 869 A.2d 1185, 1189 (R.I. 2005). That section of the Restatement provides, in relevant part: "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim [. . . .] the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connection transactions, out of which the action arose." The Restatement goes on:
 "(2) What factual grouping constitutes a `transaction' [. . . .] and what groupings constitutes a `series' [. . . .] are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id.
Our High Court adopts this Restatement view, recognizing that "[t]he present trend is to see [a plaintiff's] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff."Id. at § 24 at cmt. a (adopted in ElGabri,681 A.2d at 276; Plunkett, 869 A.2d at 1189).
The two statutes under which the claims arose, FEPA and RICRA, are commonly described as being in pari materia[2] with respect to employment discrimination. See Horn v. SouthernUnion, 927 A.2d 292, 294 (R.I. 2007). However, they are "not identical twins[,]" as evidenced by a brief examination of the two statutes. Id. The RICHR was created under § 28-5-1, et seq., to hear all state fair employment practices issues; only unlawful employment practices *Page 16 
allegations are examined and litigated thereby. The FEPA statute governs fair employment practices issues, and those claims must go through the RICHR to be adjudicated. See id. They cannot be litigated without exhausting that initial administrative remedy. In order to litigate a FEPA claim in court, a right-to-sue letter must be issued. See § 28-5-24.1. On the other hand, RICRA is much broader and prohibits any unlawful discrimination in any context: it is not limited to employment-related claims.See Iacampo, 929 F. Supp. at 573. Thus, the RICHR must hear FEPA claims, and in the course of doing so, it will more likely than not hear the facts and allegations underlying a related RICRA claim, especially where the RICRA claim sounds in employment-related discrimination.
Under the Restatement's transactional definition of "claim," Monteiro's RICRA and FEPA claims may indeed be the same for purposes of invoking res judicata. See Restatement (Second)Judgments, § 24, cmt. a ("[t]he present trend is to see [a plaintiff's] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff.") The factual underpinnings and allegations for an employment-related RICRA claim are going to be the same as those constituting a FEPA claim brought before the RICHR. Monteiro surely presented evidence and arguments before the RICHR pertaining to his employment discrimination claims that supported a claim under the RICRA and, concurrently, FEPA. Under this view, the RICHR decision as to the FEPA claim can and does preclude subsequent litigation of the RICRA claim here and now. All three RICRA claims — disparate treatment, hostile work environment/harassment and retaliation — are estopped from litigation, despite Monteiro's evidentiary offerings. *Page 17 
 Conclusion
As discussed in the foregoing, the Union and Union Defendants' Motion for Summary Judgment against Plaintiff Monteiro shall be denied in part and granted in part. Specifically, genuine issues of material fact as to the DFR claim remain, preventing this Court from disposing of the case at this stage. Monteiro has come forth with copious rebuttal evidence on that issue, raising many unresolved issues before this Court. However, this Court will grant preclusive effect to the RICHR decision, thus barring the relitigation of the RICRA claim. The Court also denies Defendants' Motion to Dismiss the case pursuant to R.I. Super. Ct. R. Civ. P. 41(b)(2).
The effect of this Decision is to dispose of the RICRA claims, leaving the DFR and failure to prosecute issues open for further litigation.
[1] Monteiro is African-American and a practicing Jehovah's Witness.
[2] Statutes that are in pari materia must be read in relation to one another, harmonizing them in order to honor their general objective scopes. See generally Horn,927 A.2d at 295. *Page 1